**UNITED STATES of America**
v.
**Ian P. BRISCOE, Appellant.**
**No. 22476.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 20, 1970.
Decided Oct. 16, 1970.

---

Mr. Samuel Scrivener, Jr., Washington, D. C. (appointed by this Court), for appellant.

Mr. Brian W. Shaughnessy, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before LEVENTHAL and ROBINSON, Circuit Judges, and DAVIES,* Judge, United States District. Court for the District of North Dakota.

LEVENTHAL, Circuit Judge.

The initial issue raised on this appeal is whether appellant's plea of guilty to housebreaking was in any way fostered by the Assistant United States Attorney on the case, so as to justify withdrawal of the plea to prevent "manifest injustice" under Rule 32(d) of the Federal Rules of Criminal Procedure. We affirm the District Court's holding on remand following an earlier decision by this court, that the attorney's behavior did not in any significant way affect appellant's decision to plead guilty.

Appellant, an alien, was first convicted of housebreaking in 1960, and

---

* Sitting by designation pursuant to Title 28, U.S.Code, Section 292(c).

sentenced under the Youth Corrections Act, 18 U.S.C. §§ 5005–5026 (1964). While on probation, he was convicted of two more housebreaking offenses in 1964, the second of which is appealed from here. Appellant contends that he entered his guilty plea to the second offense so as to be eligible for deportation under the conditions of 8 U.S.C. § 1251(a) (4), which provides for the deportation of aliens upon conviction of two crimes involving moral turpitude. Appellant desired deportation so as to begin a new life as an enlistee in the British Marines. He testified that he had concluded, upon the advice of his counsel, of the Immigration and Naturalization Service, and of the Assistant United States Attorney, that this third conviction was necessary because the first conviction, imposed under the Youth Corrections Act, would not be counted by the Service toward deportation. Therefore, he pled guilty. However, subsequent to his conviction, he sought to withdraw his guilty plea on the second 1964 offense.

When the case was first on appeal here, we noted our concern that the Government attorney, in the absence of a strong case against appellant,[1] may have made representations to appellant to the effect that all that was desired was to deport him, and that as the 1960 conviction would not be counted for that purpose, a second 1964 conviction was necessary. We then stated: "If the Immigration and Naturalization Service practice is as we understand it to be from the reported decisions, and if the Assistant United States Attorney was involved in a significant way in appellant's decision that a further plea was required to render him amenable to deportation under 8 U.S.C. § 1251(a) (4), we think it may well be in the interest of justice that the guilty plea be set

aside."[2] Briscoe v. United States, 129 U.S.App.D.C. 146, 150, 391 F.2d 984, 988 (1968).

■ The Supreme Court in recent months has spoken on the matter of guilty pleas. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." "We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." Brady v. United States, 397 U.S. 742, 748, 751, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970). Moreover, in weighing the factors inherent in the difficult judgment on whether to plead guilty, defendant cannot later claim involuntariness merely because the advice of his counsel involving a question of law proves wrong, so long as such advice is within the general bounds of reasonable competence. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed. 2d 763 (1970).

■ Under appropriate circumstances the fact that a defendant has been misled as to consequence of deportability may render his guilty plea subject to attack. Insofar as a contrary view may be inferred from United States v. Parrino, 212 F.2d 919, 922 (2d Cir. 1954), cert. denied 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954), on the ground that deportability is only a "collateral consequence" of conviction, we agree with Professor Moore, see 8A, J. Moore, Federal Practice ¶ 32.07 [3b] at 32–80 (Cipes ed. 1969): "the vigorous dissent

---

1. The Government's case relied mainly on a confession by appellant made while being held in a Florida jail after appellant had jumped bail on the first of the 1964 housebreaking charges. Appellant has attacked this confession as the product of

coercion and as having been made in the absence of counsel.

2. Since we find the Government attorney was not significantly involved, we need not discuss the Immigration Service practice here.

of Judge Frank [in *Parrino*] more likely reflects the present attitude of the federal judiciary."

■ Deportation is a "drastic measure and at times the equivalent of banishment or exile, * * * It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty." Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 377, 92 L.Ed. 433 (1948). *See also* Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951). Calculations of the likelihood of deportation may thus rightly be included in the judgment as to whether an accused should plead guilty, and any actions by Government counsel that create a misapprehension as to that likelihood may undercut the voluntariness of the plea.

In the case at bar, however, we see no warrant for the relief sought by appellant on the basis of the conduct of the Assistant United States Attorney. By way of preliminary, we take note that, if we understand the matter correctly, she was correct in the advice she gave defense counsel as to the policy at that time of the Immigration and Naturalization Service (INS)—that a conviction followed by a judgment under the Youth Corrections Act would not be counted as one of the two convictions occasioning deportation. But in any event it is plain that the prosecutor's advice did not significantly affect the defendant's decision to plead guilty. She spoke to defendant's counsel, not defendant, and although she expressed a "tentative opinion" based on her conversation with INS officials, she made it clear that she was not expert on INS law or practice and that defense counsel was

to reach his own view concerning INS consequences. This he did by checking with the office of General Counsel at INS, and he advised defendant of his understanding.

■ There is ample support for the District Court's finding that the prosecutor was not significantly involved in defendant's decision to plead guilty. The remand we ordered in 1968 to explore that question did not produce grounds for relief.

■ We have also considered, and do not find in this record, grounds for relief, on the ground of incompetence of defense trial counsel, who, it may be noted, is not appellant's counsel on this appeal. Defense trial counsel undertook to explore the critical question of deportability, and even assuming, arguendo, that he might have proceeded differently or reached a different conclusion, that does not establish lack of reasonable competence. We do not undertake to review either the correctness of the understanding of defense counsel as to INS practice at the time,[3] or whether or to what extent there has been a change in INS practice. Defendant was aware that it was doubtful whether he would be sentenced rather than deported. Under the recent Supreme Court rulings we see no basis for relief either on the ground of involuntariness or incompetence of defense counsel.

Appellant's sentence has been limited to time already served, and he now faces deportation. We see no basis for judicial intervention through collateral attack on his conviction on a plea of guilty.

Affirmed.

---

3. Our 1968 opinion set forth as our provisional understanding that governing law permitted deportation based on a conviction followed by a Youth Corrections Act sentence that did not result in an expunging of the conviction. But even assuming, without deciding, that the INS

had authority to begin deportation proceedings, the INS practice may well have been in accordance with the advice given to defendant's then counsel, that INS policy was to exercise its discretion so as to avoid reliance on such a conviction.