**UNITED STATES of America**

v.

**Paul A. RUSSELL, Appellant.**

**No. 81–2144.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 26, 1982.

Decided Aug. 31, 1982.

Walter Blair, of the bar of the Court of Appeals of the State of West Virginia, pro hac vice by special leave of the Court, with whom Mercer Gordon Anderson, Washington, D. C., was on the brief, for appellant.

Roberto Iraola, student counsel, with whom Stanley S. Harris, U. S. Atty., John A. Terry, Douglas J. Behr and Catherine R. Mack, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. Michael W. Farrell and John R. Fisher, Asst. U. S. Attys., Washington, D. C., also entered appearances for appellee.

* Sitting by designation pursuant to 28 U.S.C.

Before WRIGHT and MIKVA, Circuit Judges, and William J. JAMESON,* Senior District Judge for the District of Montana.

Opinion for the Court filed by Circuit Judge MIKVA.

Opinion concurring in part and dissenting in part filed by Senior District Judge JAMESON.

MIKVA, Circuit Judge:

The defendant, a resident alien, entered a guilty plea after negotiations with the United States Attorney. When deportation proceedings based on the resulting conviction were later initiated against the defendant, he moved under Fed.R.Crim.P. 32(d) to withdraw the plea. The district court denied the motion, noting that the possibility of deportation is not a direct consequence of a guilty plea under Fed.R.Crim.P. 11. Although this is a correct statement of the law, it does not exhaust the issues raised by the defendant, and we therefore hold that the district court abused its discretion in finding the defendant's motion governed by *United States v. Sambro*, 454 F.2d 918 (D.C. Cir.1971). Moreover, the supplemental record on appeal makes it clear that the prosecution made misrepresentations concerning the deportation consequences of the defendant's plea. Accordingly, rather than remanding this case for further consideration of the Rule 32(d) motion, we must vacate the defendant's guilty plea.

## I. BACKGROUND

Paul Russell, a twenty-three year old citizen of Jamaica, has been a legal resident of the United States for eight years. On March 26, 1981, he was driving a car when it was stopped by policemen. A co-defendant, Grey, was riding in the front passenger seat. On the car's front floor, at Grey's feet, the police discovered a bag containing approximately one pound of marijuana. The police also seized a nine millimeter

§ 294(d).

automatic pistol. The location of the handgun in the car is disputed.

An indictment filed against Russell and Grey in April 1981 contained four counts. Counts I and II charged Russell and Grey with possession of marijuana, and possession with intent to distribute. Counts III and IV charged Russell alone with carrying a handgun without a license, and possession of a prohibited weapon.[1] Counts II and III (simple possession and carrying an unlicensed handgun) are misdemeanors; the other two counts are felonies.

After bargaining with the United States Attorney, Russell agreed to plead guilty to both misdemeanor counts and the government agreed not to allocate against him at sentencing. The plea bargaining was complicated, however, by the fact that Russell denied possession or knowledge of the handgun and thus protested his innocence to the third count of the indictment. Although the police officers seemed prepared to testify that the gun was recovered from Russell's person, Russell contended that the gun was hidden in the bag containing marijuana and that he did not know about the gun until the police discovered it.

Russell therefore tendered his plea under the doctrine of *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), which approved plea bargains even in situations when the defendant disclaims guilt. Russell also offered a factual plea to the second count of the indictment, admitting only that he knew the bag contained marijuana. These terms were acceptable to the United States Attorney, and after some colloquy the district court accepted the plea. Plea Transcript (Plea Tr.), June 5, 1981. In August 1981, the district court sentenced Russell to concurrent one-year terms of incarceration and three years of probation.

All but one month of the sentence of incarceration was suspended.

In September 1981, the Immigration and Naturalization Service (INS) instituted deportation proceedings against Russell under 8 U.S.C. § 1251 (1976).[2] Almost immediately, four days later, Russell moved to vacate his sentence and to withdraw the plea of guilty under Rule 32(d). Russell argued that he had not understood the consequences of the plea because he did not realize that he was subject to deportation based on the misdemeanor convictions.

The district court denied Russell's motion without a hearing. In a brief memorandum order, the district court stated:

> Defendant has moved to withdraw his plea of guilty. He claims that neither the Court nor the prosecutor advised him that he might be deported on account of committing the crimes of which he stands convicted. The possibility of deportation is not a "direct" consequence of his conviction, anymore than would be the impact of conviction upon his credit rating, employment prospects or the sentence he might receive if he is again convicted of some crime. *See United States v. Sambro,* 454 F.2d 918, 922 (D.C.Cir.1971).

Order, October 15, 1981.

## II. THE LEGAL SETTING

Rule 32(d) provides:

> A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

---

1. The D.C.Code prohibits possession of certain "prohibited weapons," including machine guns. D.C.CODE ANN. § 22–3204 (1981). The definition of a "machine gun" includes any automatic or semi-automatic weapon that can fire twelve or more rounds at a time, and thus covers the sort of automatic pistol that Russell was charged with possessing.

2. This section provides that aliens "shall, upon the order of the Attorney General, be deported," if they are "convicted of two crimes involving moral turpitude ... regardless of whether confined therefor and regardless of whether the convictions were in a single trial," or a single conviction under "any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana," 8 U.S.C. §§ 1251(a)(4), (a)(11).

The rule thus permits district courts to allow plea withdrawals either before or after sentencing. Withdrawal of the plea is never a matter of right, but before sentencing the practice is liberal. "[W]ithdrawal should be 'freely allowed' and granted 'as a matter of course.'" *United States v. Morgan*, 567 F.2d 479, 493 (D.C.Cir.1977) (footnotes omitted); *see Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927) (withdrawal of plea before sentence should be allowed if that is "fair and just"). After sentence has been imposed, however, the test is whether withdrawal of the plea will "correct manifest injustice." In either context, the question is left with "the sound discretion of the trial court," and its decision will not be reversed by an appellate court except for abuse of discretion. *United States v. Davis*, 617 F.2d 677, 685 (D.C.Cir.1979).

■ Rule 32(d) thus contrasts sharply with Rule 11, which governs the taking of guilty pleas. Rule 11 is not discretionary; the district court "shall not accept a plea of guilty ... without first, by addressing the defendant personally in district court, determining that the plea is voluntary" and that "there is a factual basis for the plea." Rule 11(d), (f); *see Santobello v. New York*, 404 U.S. 257, 261–62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). A plea cannot be considered voluntary if it is induced by threats or misrepresentation, or if the defendant is not "fully aware of the direct consequences" of the plea. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970); *see* Rule 11(c)(1).

■ Certain consequences of a guilty plea are "collateral" rather than direct, however, and need not be explained to the defendant in order to ensure that the plea is voluntary.[3] The distinction between a collateral and a direct consequence of a criminal conviction, like many of the lines drawn in legal analysis, is obvious at the extremes and often subtle at the margin. Perhaps the most difficult case concerns the alien whose criminal conviction leads often, and sometimes automatically,[4] to deportation. American jurists have held sharply divided views about the very nature of deportation. "It is well settled that deportation, while it may be burdensome and severe for the alien, is not a punishment." *Mahler v. Eby*, 264 U.S. 32, 39, 44 S.Ct. 283, 286, 68 L.Ed. 549 (1924); *see Fong Yue Ting v. United States*, 149 U.S. 698, 730, 13 S.Ct. 1016, 1028, 37 L.Ed. 905 (1893) (deportation "is not a punishment"). But deportation may result "in loss ... of all that makes life worth living," *Ng Fung Ho. v. White*, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922), and is "close to punishment," *Galvan v. Press*, 347 U.S. 522, 531, 74 S.Ct. 737, 742, 98 L.Ed. 911 (1954). "Every one knows that to be forcibly taken away from home, and family, and friends, and business, and property, and sent across the ocean to a distant land, is punishment; and that oftentimes most severe and cruel." *Fong Yue Ting v. United States*, 149 U.S. at 740, 13 S.Ct. at 1032 (Brewer, J., dissenting); *see Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433 (1948) (deportation is "a penalty" and "a drastic measure and at times the equivalent of banishment or exile"); *Jordan v. DeGeorge*, 341 U.S. 223, 232, 71 S.Ct. 703, 708, 95 L.Ed. 886 (1951) (Jackson, J., dissenting) ("a life sentence of banishment"). It is not surprising that sim-

---

3. *See, e.g., United States v. Crowley*, 529 F.2d 1066, 1072 (3d Cir.), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976) (loss of civil service job as result of felony conviction); *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973) (nature of institution to which defendant was sent); *Meaton v. United States*, 328 F.2d 379, 380 (5th Cir. 1964), *cert. denied*, 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965) (loss of rights to vote and travel abroad).

4. 8 U.S.C. § 1251(b) provides that aliens need not be deported under section 1251(a)(4) if they have been pardoned or if the sentencing court makes such a recommendation. The statute concludes, however: "The provisions of this subsection shall not apply in the case of any alien who is charged with being deportable from the United States under subsection (a)(11) of this section." The record does not show whether the deportation proceedings were initiated against Russell under subsections (a)(4) or (a)(11).

ilar tensions have complicated the task of deciding whether deportation is a direct or a collateral consequence of a guilty plea.

It has become well settled, however, that Rule 11 does not require informing a defendant of the possibility of deportation. *See, e.g., Fruchtman v. Kenton*, 531 F.2d 946, 948–49 (9th Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976) (deportation is collateral; requirement that judge inform defendant of possibility would impose unmanageable burdens on trial courts); *Michel v. United States*, 507 F.2d 461 (2d Cir. 1974) (deportation is collateral because it is not meted out by sentencing judge, but rather occurs in separate administrative civil proceedings); *cf. United States v. Santelises*, 476 F.2d 787, 790 (2d Cir. 1973) (same analysis under Due Process Clause). Despite the distinction between Rule 11, which controls the validity of a plea, and Rule 32(d), which suggests that a plea that is valid when made may nevertheless be withdrawn if the interests of justice so require, these decisions have influenced judicial analysis under the latter rule.

As a result, it has frequently been held that defendants are not entitled to withdraw pleas under Rule 32(d) merely because they misunderstood the possible consequences for deportation. *See, e.g., Briscoe v. United States*, 432 F.2d 1351, 1354 (D.C. Cir.1970); *United States v. Parrino*, 212 F.2d 919 (2d Cir.), *cert. denied*, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954). These decisions in turn help sketch the parameters of the trial court's discretion under Rule 32(d). In *United States v. Sambro*, 454 F.2d 918 (D.C.Cir.1971), for example, the defendant had been indicted on twelve counts of heroin and marijuana offenses, and ultimately entered a plea of guilty on one heroin count. Prior to sentencing, the defendant learned that his conviction would result in deportation, and moved to withdraw the plea. The trial court denied the motion, and the court of appeals affirmed on the basis that the trial court had not abused its discretion. Three factors appear to have played a role in the panel's analysis. First, the defendant had not attacked his earlier plea on the merits.

[E]ven yet he has not alleged that he has any valid defense to the crime charged in the count to which he pleaded guilty.... [A] plea of guilty is a confession in open court as to the facts alleged: in the instant case appellant Sambro has made such a confession, has said nothing whatever to repudiate it, nor has he claimed any legal defense to the charge.

*Id.* at 921–22. Second, "[w]e also observe that the Government was willing to accept a plea to one of the heroin, not marijuana, counts of the 12-count indictment, thus evidencing some confidence in the strength of its case if the matter came to trial." *Id.* at 921. Finally, Sambro's apparent failure to consider the possibility of deportation was not attributable to any misrepresentation by the prosecution or the trial court. *Id.* at 923; *see Briscoe v. United States*, 432 F.2d at 1353–54.

In summary, it is possible to identify several considerations that should guide district court exercise of discretion under Rule 32(d). The first is the strength of the defendant's reason for withdrawing the plea, including whether the defendant asserts his innocence of the charge. *See Sambro*, 454 F.2d at 921–22; *United States v. Crowley*, 529 F.2d 1066, 1072 (3d Cir.), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976). The second is the possible existence of prejudice to the government's case as a result of the defendant's untimely request to stand trial. *See Crowley*, 529 F.2d at 1072; *Sambro*, 454 F.2d at 927 (Leventhal, J., dissenting to denial of rehearing en banc) ("the record is devoid of a showing of some offsetting element of the administration of justice. The Government did not even submit, *e.g.*, that it no longer had available a crucial witness who was available when the guilty plea was taken"). Finally, the trial court must consider whether the defendant's misunderstanding of the collateral consequences of the plea is the result of misleading statements by governmental authorities or the defendant's own ignorance.

## III. RUSSELL'S APPEAL

■ Judged by the foregoing standards, we hold that the trial court abused its discretion in denying Russell's Rule 32(d) motion on the basis of *Sambro*. The record does not show that the trial court weighed the considerations that should govern the disposition of a Rule 32(d) motion: whether Russell protested his innocence, the existence of prejudice to the government, and whether the seriousness of the consequences facing Russell might under the circumstances make it manifestly unjust to hold Russell to his earlier plea. In this case, these factors all are in Russell's favor.

Unlike the defendants in *Sambro, Parrino*, and *Cordero v. United States*, 533 F.2d 723 (1st Cir. 1976), Russell has consistently protested his innocence to the offenses for which he was indicted.[5] Russell moved within four days of the initiation of INS proceedings to withdraw his plea, and this was only three months after the plea had been taken; the government has not suggested that crucial witnesses are no longer available, or that its case against Russell might be prejudiced in any other respect by the passage of time since June 1981. Finally, although deportation is not a "direct" consequence of a plea for purposes of Rule 11, it is difficult to imagine a collateral consequence that would be more compelling for purposes of showing the "manifest injustice" required by Rule 32(d).

In short, Russell's Rule 32(d) motion deserved more than the summary consideration it received in the district court. As the Supreme Court recognized in *Alford*, there are situations in which a defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." 400 U.S. at 37, 91 S.Ct. at 167. When such a defendant learns that his plea will have additional consequences of an unquestionably serious nature, and rapidly changes his calculations about the costs and benefits of standing trial, it may be manifestly unjust to hold the defendant to his earlier bargain unless the district court identifies offsetting elements of the administration of justice.[6]

In the instant case, however, we do not remand Russell's motion for consideration by the district court in light of the standards appropriate under Rule 32(d). After the briefing and oral argument of this case, counsel for the government transmitted to the court a transcript of Russell's plea colloquy with the trial judge. The transcript contains the following discussion among the court, the defense attorney, and the Assistant United States Attorney concerning Russell's reasons for entering a plea of guilty:

> THE COURT: The reason here is that the defendant has an opportunity to minimize the hazard to his liberty.

---

**5.** Although Russell submitted a factual plea to the marijuana count, admitting that he knew the bag contained marijuana, he also contended that he and Grey were transporting it on behalf of other parties and were to deliver it to a particular destination. Russell's counsel suggested that "the bag was handed to Mr. Grey and put under the seat by him," Plea Tr. at 18, and at trial Russell might have argued that these facts were not inconsistent with his innocence. *See generally United States v. Pardo*, 636 F.2d 535, 547 (D.C.Cir.1980); *United States v. Watkins*, 519 F.2d 294, 298 (D.C.Cir.1975); *United States v. Bethea*, 442 F.2d 790, 792–93 (D.C.Cir.1971). Moreover, Russell's attorney may have encouraged a factual plea to this count because of the district court's initial reluctance to accept the plea bargain. *See* Plea Tr. at 2–3 ("I'm allergic to *Alford*"); *id.* at 11 ("I don't like to make this courtroom and myself available for a cock and bull story").

**6.** We do not believe this holding can possibly "result in a mass exodus from the federal penitentiaries," *United States v. Cariola*, 323 F.2d 180, 186 (3d Cir. 1963), because our decision affects only those defendants who enter pleas under *Alford* or otherwise have a colorable claim of innocence of the charges to which they originally entered pleas of guilty. In its plea negotiations, the government need not agree to accept pleas under *Alford*, but may press for an admission of guilt or put the defendant to trial. At the same time, however, district courts reviewing Rule 32(d) motions ought to be sensitive to the possibility that the defendant has not received effective assistance of counsel. *See generally Strader v. Garrison*, 611 F.2d 61, 64 (4th Cir. 1979) (regarding *Parrino* and *Sambro* "as aberrations. In neither case was the problem approached in terms of the constitutional entitlement to the effective assistance of counsel").

DEFENSE COUNSEL: That's correct, Your Honor.

PROSECUTOR: There is one additional reason, Your Honor. We haven't explored it thoroughly, but it would appear that if Mr. Russell were convicted under the felony count, marijuana again, that he might be subject to deportation, *which would not be the case if he took the misdemeanor —*

THE COURT: Let's hear the matter, and you remind me if I do agree to accept the plea and make the findings.

Plea Tr. at 11 (emphasis added).

As discussed above, Rule 11 requires that a defendant's plea be voluntary and not the product of misrepresentation by the prosecution. *See Brady v. United States*, 397 U.S. at 755, 90 S.Ct. at 1472. In *Briscoe v. United States*, 391 F.2d 984 (D.C.Cir.1968), this court vacated the sentence imposed on a defendant and remanded the case for a hearing on whether the defendant's plea had been voluntary, suggesting that if the prosecution had misled the defendant about the deportation consequences of his plea, "we think it may well be in the interest of justice that the guilty plea be set aside." *Id.* at 988. The trial court then rejected the suggestion that the United States Attorney had misrepresented INS procedures, and the court of appeals affirmed in *Briscoe v. United States*, 432 F.2d 1351 (D.C.Cir.1970). The court again observed: "Under appropriate circumstances the fact that a defendant has been misled as to consequence of deportability may render his guilty plea subject to attack." *Id.* at 1353.

In our view, the comments of the Assistant United States Attorney during Russell's plea proceedings were a clear misstatement of the law; accordingly, Russell's plea cannot be deemed voluntary under Rule 11. The serious consequences of involuntary deportation, *see* p. 38 *supra*, clearly demonstrate how the threat of deportation could be abused during plea negotiations. It can readily be imagined that some resident aliens might prefer to avoid even the risk of deportation rather than stand trial for crimes of which they believed themselves innocent. Although it may be permissible for prosecutors to discuss deportation consequences with defendants when their understanding of the law is accurate, *see Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the practice cannot be tolerated when the prosecution's advice is erroneous, no matter how well intended. The government may not be required to inform defendants of collateral plea consequences such as deportation, but it does have an obligation not to mislead them. Because the taking of Russell's plea was so clearly tainted by the possibility that he had been confused by the government about the consequences of pleading to misdemeanor rather than felony charges, Russell's guilty pleas must be vacated. The government remains free, of course, to bring Russell to trial on the offenses for which he was originally indicted.

CONCLUSION

The risks posed by the continued and widespread use of plea bargaining to the constitutional right of trial by jury have long been obvious, and a source of constant tension in our jurisprudence. Rule 11 protects those whose pleas are clearly involuntary, and thus prevents the most pernicious uses of plea bargaining. When the record indicates that the defendant's plea has been induced by inaccurate prosecutorial suggestions about its consequences, as here, the plea cannot be considered voluntary and must be vacated.

We reach this holding, of course, because the prosecution chose to speak, and spoke incorrectly. Had the government stood mute this would be a more difficult case. It is extremely troublesome that deportation has never been considered a direct consequence of guilty pleas of the sort that must be brought to the defendant's attention before his plea may be considered voluntary under Rule 11. Aliens form a discrete, easily recognized class of defendants. They are deported by the same branch of government that brings criminal charges against them, and in many cases their deportation is a more direct and automatic consequence of conviction than any other sanction. District courts need to remember that although they are not required to ex-

plain the possibility of deportation to alien defendants before accepting a plea under Rule 11, nothing prohibits them from doing so. The distribution of justice to alien defendants can only be enhanced if the trial courts make sure such defendants know the pandects under which they plead.

Assuming a defendant who does not realize he faces automatic deportation can "voluntarily" waive the right to trial by jury and enter a guilty plea, it is nevertheless clear that such a defendant has a compelling reason for seeking to stand trial when all the consequences of his plea become known. The disposition of Rule 32(d) motions to withdraw the plea should be governed by whether it is manifestly unjust to let the plea stand. When the defendant enters a plea under the *Alford* doctrine, protesting his innocence, and then moves immediately to withdraw that plea after learning that he is to be deported as a consequence, his motion is not controlled by *Sambro*. But whatever the interplay between *Alford* and *Sambro*, a plea that has been induced by inaccurate prosecutorial suggestions about its consequences cannot be considered voluntary and must be vacated. The right to trial by jury demands no less.

*It is so ordered.*[7]

JAMESON, District Judge: (concurring in part and dissenting in part).

I agree with most of Judge Mikva's well considered opinion, including the conclusion that if the prosecution misled appellant with respect to the deportation consequences of his plea, the plea should be set aside in the interest of justice.

While it may be inferred from the statement of the Assistant United States Attorney when the plea was entered that appellant was misled, in view of the ambiguous nature of the comment, I would remand to the district court for further consideration, as was done in *United States v. Briscoe*, 391 F.2d 984 (D.C.Cir.1968). The comment of the Government attorney indicating that appellant would not be subject to deportation for misdemeanor convictions, was prefaced by the statement that "We haven't explored it thoroughly, but it would appear that . . . ." Following the attorney's statement, the court said: "Let's hear the matter, and you remind me if I do agree to accept the plea and make the findings." Apparently nothing further was said at either the arraignment or the hearing at the time of sentencing with respect to the possibility of deportation.

In a supplemental memorandum filed with the transcript of the proceedings, Government counsel requested a remand similar to that in *Briscoe*, stating that the Government expected to "demonstrate that appellant was fully aware of the possibility of deportation as a consequence of his plea, and that the prosecutor made no representations regarding the collateral consequence in order to induce him to plead guilty." Under the circumstances I would give both parties an opportunity to present additional evidence at a hearing on remand.

---

7. The government's post-argument request for a remand is based on *United States v. Briscoe*, 391 F.2d 984 (D.C.Cir.1968). In our view, a remand is unnecessary in this case. Unlike *Briscoe*, the record here already contains the relevant statements of the prosecutor. Of course a remand would allow further fact-finding, but these facts would be entirely collateral to the point that the prosecutor made inaccurate statements, during the plea proceeding itself, that *had* to be "significant" in Russell's decision to go ahead and plead guilty. *See* 391 F.2d at 988. The government seeks a remand primarily to show that the prosecutor did not make his comments "in order to induce [Russell] to plead guilty," but we already assume that to be the case. As the court noted in *Briscoe*, "We assume that there was no lack of bona fides on anyone's part," because it is enough when the defendant's "erroneous conclusion was fostered, though we do not say it was initiated, by the Government attorney." *Id.* Whether the prosecutor made his comments in order to "induce" Russell's plea is irrelevant, because the comments themselves could not have failed to contribute to Russell's misunderstanding of the consequences of his plea.