67 F.3d 300
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William M. DAAS, Defendant-Appellant.
 No. 95-3310.
 United States Court of Appeals, Sixth Circuit.
 Oct. 3, 1995.
 
 Before: ENGEL, GUY, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, William Daas, entered a Rule 11 plea to two counts of a multi-count indictment. He pleaded guilty to mail fraud and theft of mail.[1] Defendant was sentenced to 10 months custody and a three-year term of supervised release. A special condition of supervised release was imposed:
 
 
 2
 You shall not continue to engage in self-employment practices that rely on activity in national magazines, or local magazines, or in solicitation as a means of operation during the periods of incarceration or supervised release.
 
 
 3
 (App. 110.) He also contends that the "occupational restriction" imposed as a condition of supervised release was unconstitutional. We find no merit in any of the issues raised and defendant's sentence is affirmed.
 
 I.
 
 4
 The background facts concerning defendant's illegal activities are best set forth in the presentence report:
 
 
 5
 [F]rom December 1991 through April 1993, the defendant advertised in the business opportunities section of national magazines "Stuff envelopes for $140/100." When members of the public responded to the ad, the defendant sent them a "Special Invitation Form" falsely representing that 1) envelopes already addressed and stamped would be made available to stuff and mail, 2) that a participant would be able to make $140 for each 100 envelopes stuffed and mailed for the defendant, and 3) that a participant could earn $4,600 per month.
 
 
 6
 These representations led respondents to believe that they would be purchasing an opportunity to work for the defendant and that he would supply pre-addressed envelopes to stuff and mail. In fact, respondents who mailed money to the defendant, usually around $29.00 and $50.00, received a booklet entitled "Money Marketing Program" which advised them to turn around and place the same advertisements and sell the same booklet they had just purchased. Although the book listed some money making ideas, none of them involved stuffing envelopes the defendant would provide....
 
 
 7
 The defendant would and did violate Cease and Desist order No. CD-1367 issued by the United States Postal Service on or about April 20, 1987, ordering the defendant to cease and desist from representing, among other things, that he is providing at-home employment that consists of primarily of inserting circulars in envelopes. He also violated Cease and Desist order No. CD-2648 issued by the United States Postal Service on or about July 31, 1989, ordering the defendant to cease and desist from representing, among other things, that participants will earn substantial amounts of money in a program primarily consisting of stuffing envelopes.
 
 
 8
 ....
 
 
 9
 Relative to Count 13, in April 1993, the defendant forged the name of his ex-wife on a change of address form, causing her mail to be delivered to his address. Included in the mail was a paycheck from her employer made payable to her in the amount of approximately $100. The defendant forged his ex-wife's endorsement on the check and deposited it into his checking account. Investigation revealed that the defendant met his future wife in January, 1993, and married three weeks later. The couple never lived together and never consummated their marriage due to his insistence that she put her name on his lease and place the utilities in her name.
 
 
 10
 (App. 131-32.)
 
 
 11
 We first address defendant's claim that his plea was not made knowingly and voluntarily. This contention only can be fairly described as disingenuous. To begin with, defendant is a graduate of both college and medical school. Although born in Syria, he has been in the United States for the last 10 years and he is completely fluent in English. He has worked in a number of hospitals since coming to this country, and also has been in business for himself for at least eight years.
 
 
 12
 The Rule 11 plea procedure was "by the book" with the trial judge taking great pains to touch all the bases. Although represented by counsel, defendant participated directly in most of the plea colloquy. In reading the transcript of the plea procedure, we find absolutely no indication of the defendant not being completely knowledgeable about the proceedings. Insofar as voluntariness is concerned, the trial judge almost implored the defendant not to plead guilty. This was premised upon the defendant's consistently evasive answers to all the questions and his wanting to put his own spin on everything that occurred. We are left with no doubt the plea was voluntary.[2]
 
 II.
 
 13
 We turn now to the special condition of supervised release regarding mail solicitation. Defendant claims this is an unconstitutional restriction. In support of this contention, defendant offers Federal Deposit Insurance Corporation v. Mallen, 486 U.S. 230 (1988). We find this case inapposite. In Mallen, the issue concerned the post-deprivation hearing procedures of the FDIC after they had suspended a bank official. Rejecting the arguments of the suspended bank officer and reversing the district judge, the Court decided that the 90-day delay in granting a hearing as well as the refusal to allow oral testimony did not violate the Constitution. Id. at 244. Since the FDIC rules provided for a hearing, the Court did not address the issue of whether a hearing would be mandatory. To the degree the case, by implication, does indicate that there are property rights in employment that cannot be taken by the government without a hearing, we still find the case of little value to defendant since he was afforded the opportunity for a hearing.[3] Although it is true that defendant did not learn of the special occupational restriction until sentence was imposed, he did file a motion subsequent to sentence to vacate his plea. In that motion, he alluded to the occupational restriction, which was made a condition of probation.[4] Although no hearing was held on this motion, and none was required, the court issued a written opinion denying the motion. In that opinion, the trial judge stated:
 
 
 14
 In regard to Daas's claims that he was not aware that the loss of livelihood or the risk of deportation could result from his entering a guilty plea, it is settled case law "that the accused must be 'fully aware of the direct consequences' " of his guilty plea. Brady v. United States, 397 U.S. 742, 755 (1970) (emphasis added). This language bolsters the District [of Columbia] Court of Appeals' interpretation of the Brady court's decision wherein it noted that by using the word " 'direct' [the Supreme Court] ... excluded collateral consequences" from consideration at the time a defendant enters a guilty plea. United States v. Sambro, 454 F.2d 918, 922 (D.C.Cir.1971).
 
 
 15
 Included among the collateral consequences of entering a guilty plea are the loss of civil service employment, United States v. Crowley, 529 F.2d 1066 (3d Cir.1976), cert. denied, 425 U.S. 995 (1976), and the right to vote and to travel freely abroad, Meaton v. United States, 328 F.2d 379 (5th Cir.1964), cert. denied, 380 U.S. 916 (1965). Deportation is also a collateral consequence of a guilty plea and, therefore, need not be explained to a defendant in order to insure that the plea is voluntary. United States v. Campbell, 778 F.2d 764, 767 (11th Cir.1985); United States v. Russell, 686 F.2d 35, 41 (D.C.Cir.1982). Although deportation is considered a harsh collateral offense, the Eleventh Circuit has noted that "we do not find deportation so unique as to warrant an exception to the general rule that a defendant need not be advised of the [collateral] consequences of a guilty plea." Id. at 769 n. 2.
 
 
 16
 (App. 128-29.)
 
 
 17
 We note first that we review a district court's imposition of a special condition as part of a supervised release under an abuse of discretion standard. United States v. Bortels, 962 F.2d 558, 560 (6th Cir.1992). Further, in Bortels, we stated that "[t]his Circuit mandates that where a condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public, it must be upheld." Id.
 
 
 18
 Furthermore, the trial judge specifically was permitted by U.S.S.G. Sec. 5F1.5 to impose an occupational restriction as a condition of supervised release:
 
 
 19
 (a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:
 
 
 20
 (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and
 
 
 21
 (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.
 
 
 22
 (b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.
 
 
 23
 Here, it was the defendant's "occupation" that constituted the offense of conviction and so the "direct relationship" requirement of the guidelines is clearly met. Similarly, the court was justified in concluding such a restriction was necessary to protect the public since defendant had, prior to conviction, received two administrative warnings from the United States Postal Service to cease and desist from the exact conduct that ultimately was the basis for indictment and conviction. Coupled with the defendant's evasiveness at sentencing, these facts show the court clearly was justified in concluding the defendant could not be trusted to refrain voluntarily from returning to his old ways.
 
 
 24
 Insofar as the length of the restriction is concerned, we find it to have been a proper exercise of the sentencing judge's discretion to make the duration of the special condition co-extensive with the three-year period of supervised release. In a case with somewhat similar facts, United States v. Burnett, 952 F.2d 187, 190 (8th Cir.1991), the court upheld a two-year restriction that required the defendant to " 'be employed in a business which does not require travel and does not involve the sale of vending machines." Id. In Burnett, the underlying conviction involved mail fraud in the sale of vending machines.
 
 
 25
 We note also that since defendant is a medical doctor, the restriction involves only "fill-in" employment and does not restrict defendant in his chosen profession.
 
 
 26
 Although we uphold the imposition of the occupational restriction, we do find the wording of the restriction to be somewhat problematic. In the interest of avoiding future controversy, we construe the restriction only to prohibit the defendant from engaging in the business of mail-order solicitation, as that term is commonly understood, for the period of incarceration and supervised release.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Four days after sentencing, defendant filed a motion to withdraw his plea, which was denied. It is not clear whether or not defendant is raising the denial of this motion as an issue. It is not set forth as an "issue" in the front of defendant's brief, yet there is a section in the brief arguing the court erred in denying the motion. To the degree it is raised as an issue, we find no error in the denial by the trial judge
 
 
 [2]
 The defendant, throughout the plea procedures, was trying to get a commitment that he would not receive a custody sentence. The judge repeatedly told him no such promise would or could be made
 
 
 [3]
 Defendant also cites to United States v. John A. Beck Co., 770 F.2d 83 (6th Cir.1985). Beck is a pre-guidelines case and its holding is not applicable to the proceedings in this case
 
 
 [4]
 Defendant also referenced the possibility of deportation, which was not mentioned in the sentence or at the sentencing hearing