**UNITED STATES of America,**

v.

**Philip SINGH, Defendant.**

**Criminal Action No. 01–199 (RBW).[1]**

United States District Court,
District of Columbia.

Feb. 24, 2004.

Herbert Levenstein, Dross, Levenstein, Perilman & Kopstein, Seabrook, MD, L. Barrett Boss, Asbill, Moffitt & Boss, Chartered, Washington, DC, for Defendant.

Michael Thomas Ambrosino, U.S. Attorney's Office, Washington, DC, for Plaintiff.

## MEMORANDUM OPINION

WALTON, District Judge.

Currently before the Court is the defendant's Motion to Vacate, Set Aside or Correct Sentence. For the reasons below, the Court concludes that defendant's guilty plea was not voluntary and his guilty plea and sentence are vacated.

### I. Factual Background

Philip Singh, who is 40 years old, has legally resided in the United States for 30 years, although he has remained a citizen of Guyana. Defendant's Motion to Set Aside or Correct Sentence ("Def.'s Mot.") ¶ 3. He is married to Janet Campbell Singh, a United States citizen, and has two small children who are also United States citizens. *Id.* ¶ 4. On June 7, 2001, Singh was charged in an information with mail fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1341 and 1342, along with a "[f]orfeiture [a]llegation" pursuant to 18 U.S.C. § 982. The information accused Singh of engaging in a fraudulent scheme between March 1999 and February 2001, while he was a materials buyer for Providence Hospital. While employed there, defendant allegedly embezzled monies from the hospital by creating false purchase orders for materials or services from Allstarts, Inc., a shell company he formed, that were never actually received by the hospital. The creation of the purchase orders caused the hospital to send a number of checks to a post office box that Singh had established in Allstarts' name as payment for the non-existent materials and services. The checks were subsequently endorsed in Singh's wife's maiden name and deposited into his and his wife's joint bank account. As a result of the scheme to defraud the hospital, defendant received funds totaling approximately $349,027.

According to the government, this was not Singh's first occasion when he defrauded one of his employers. Prior to working

---

1. This action was assigned a civil case number, No. 03–178, however, the pleadings have all been designated for filing in this criminal case file.

at Providence Hospital, Singh was employed at Arlington Hospital where, again using the Allstarts company he established, he misappropriated approximately $167,800.43 of that hospital's funds. Defendant used the money from these schemes to purchase real estate, a Lexus automobile, and to otherwise enhance the quality of his and his wife's lifestyles.

On July 23, 2001, defendant entered into an agreement to plead guilty to the mail fraud charge and also agreed to forfeit $110,880.76 in cash, the Lexus automobile, and the equity in his two Virginia residences. On the same date, defendant entered his plea of guilty before another judge of this Court. During the plea hearing, the judge, once informed that defendant was a citizen of Guyana, advised defendant that because he was "not a United States citizen, if I accept your plea of guilty, this *could* result in your deportation from the United States." Transcript of Guilty Plea to Information dated July 23, 2001 ("Plea Tr.") at 5 (emphasis added). However, because defendant pled guilty to mail fraud involving more than $10,000, which is categorized as an "aggravated felony" [2] under the immigration laws, he faces absolute, non-discretionary deportation.

### The Parties' Arguments

Defendant argues that his sentence should be vacated for several reasons. First, he argues that the Rule 11 colloquy was defective because "it fail[ed] to inform [him] about the automatic deportation consequences of his plea to an 'aggravated felony'...." Memorandum of Facts and Law in Support of Defendant's Motion to Vacate, Set Aside or Correct Sentence ("Def.'s Mem.") at 4. Although acknowledging that the District of Columbia "Circuit has held that the immigration

consequences of a criminal conviction are 'collateral,'" and therefore, a defendant does not need to be informed of such consequences, *see United States v. Russell,* 686 F.2d 35, 38–39 (D.C.Cir.1982), defendant argues that "this holding should be re-examined because the 1990 and 1996 amendments to the Immigration and Nationality Act make deportation 'essentially certain, automatic and unavoidable' where a defendant is convicted of an aggravated felony." Def.'s Mem. at 4 (quoting *United States v. Couto,* 311 F.3d 179, 190 (2d Cir.2002)). Second, defendant argues that his sentence should be vacated because he was misinformed by the prosecutor and the judge as to the immigration consequences of his guilty plea. *Id.* at 9. Third, defendant argues that for different reasons his guilty plea and sentence should be vacated because he received ineffective assistance of counsel. *Id.* at 13.

In opposition, the government argues that *Russell* is binding precedent on this Court and furthermore "several other circuits have been asked to reconsider prior rulings on the issue of whether immigration consequences of a guilty plea are direct or collateral consequences of a plea in light of the changes in the immigration laws[,][and] have uniformly found those consequences to be collateral...." Government's Opposition to Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Gov.'s Opp'n") at 8–9 n. 2 (citations omitted). Regarding the defendant's second argument, the government argues that he was informed that there was a potential he could be deported and thus he was not prejudiced by any misinformation he received. *Id.* at 7. Finally, the government takes exception with the defendant's claim

---

**2.** 8 U.S.C. § 1101(a)(43)(M)(1) defines an aggravated felony as including "an offense that involves fraud or deceit in which the loss to the victim exceeds $10,000."

that his counsel's performance was constitutionally ineffective. *Id.* at 6–7.

## II. Analysis

Defendant's challenge to his guilty plea and sentence is made pursuant to 28 U.S.C. § 2255, which permits him to "move the court which imposed the sentence to vacate, set aside, or correct the sentence[,]" on the grounds that

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255. Under § 2255, the reviewing court, if it

> finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of constitutional rights of the prisoner as to render the judgment

vulnerable to collateral attack . . . shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

*Id.* Here, defendant's collateral attack on his guilty plea and sentence is predicated on two theories: (1) his guilty plea was involuntary because he was not properly informed that he would be absolutely subject to deportation and (2) he received ineffective assistance of counsel.[3]

## The Rule 11 Colloquy[4]

A guilty plea "shall not be accepted unless made voluntarily after proper advice *and with full understanding of the consequences.*" *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927) (emphasis added); *see also United States v. Russell,* 686 F.2d 35 (D.C.Cir. 1982) ("A plea cannot be considered voluntary if . . . the defendant is not 'fully aware of the direct consequences' of the plea.")[5] (quoting *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747

---

**3.** Although neither party addresses the consequences of defendant having failed to "raise [his Rule 11] objection before the court at sentencing, or on appeal," such a challenge can only be reviewed "on its merits . . . if [defendant] can establish (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *King v. United States,* 214 F.Supp.2d 669 (E.D.Va.2002) (citing *United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Nonetheless, defendant "can still prevail if he can demonstrate that 'a miscarriage of justice would result from the refusal of the court to entertain the collateral attack' due to his 'actual innocence.'" *Id.* (citation omitted); *see also United States v. Davis,* 954 F.2d 182, 184 (4th Cir.1992) (to prevail on a motion to withdraw a guilty plea after sentencing, a defendant "must prove that failure to allow withdrawal of the guilty plea would result in a 'miscarriage of justice'") (citation omitted). Be-

cause defendant here does not make a claim of actual innocence, he must show that he has suffered actual prejudice as a result of the errors he complains about. As further discussed *infra,* defendant has shown that he was prejudiced by the judge's and Assistant United States Attorney's misinformation concerning his prospects for deportation once he pleaded guilty.

**4.** In its opposition, the government does not address defendant's Rule 11 challenges. Rather, it analyzes all of defendant's challenges pursuant to the ineffective assistance of counsel standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**5.** The *Russell* Court's analysis was made in response to a Rule 32(d) challenge, which at that time "permit[ted] district courts to allow plea withdrawals either before or after sentencing." *Russell,* 686 F.2d at 38.

(1970)); *see also* Fed.R.Crim.P. 11(d).[6]

Defendant's first challenge to the Rule 11 colloquy implores the Court to adopt the sweeping proposition that the current immigration consequence of pleading guilty to an aggravated felony, which is certain deportation, is a direct, rather than a collateral consequence of a guilty plea and therefore a defendant must be informed of the deportation consequences in the Rule 11 colloquy. Def.'s Mem. at 4.

In *Russell,* the Court of Appeals noted that "[c]ertain consequences of a guilty plea are 'collateral' rather than direct," and such "collateral consequences," the court held, "need not be explained to the defendant in order to ensure that the plea is voluntary." 686 F.2d at 38. The Court noted that "like many of the lines drawn in legal analysis[,]" distinguishing a collateral versus a direct consequence of a criminal conviction "is obvious at the extremes and often subtle at the margin." *Id.* Notably, the Court stated that "[p]erhaps the most difficult case concerns the alien whose criminal conviction leads often, and sometimes automatically, to deportation." *Id.* (footnote omitted). Although acknowledging that "deportation may result 'in loss . . . of all that makes life worth living,'" the Court stated that "[i]t is well settled that deportation, while it may be burdensome and severe for the alien, is not a punishment." *Id.* (citations omitted). In light of this reality, the Court held that "[i]t has become well settled . . . that Rule 11 does not require informing a defendant of the possibility of deportation." *Id.* at 39 .(citations omitted). The Court went on to

state that, "[a]s a result, it has frequently been held that defendants are not entitled to withdraw pleas under Rule 32(d) merely because they misunderstood the possible consequences for deportation." *Id.* (citations omitted).

However, in *Russell,* the Court held that the district court had "abused its discretion in denying Russell's Rule 32(d) motion . . . .[because] although deportation is not a 'direct' consequence of a plea for purposes of Rule 11, it is difficult to imagine a collateral consequence that would be more compelling for purposes of showing the 'manifest injustice' required by Rule 32(d)." *Id.* Manifest injustice was found to exist in *Russell* because the defendant there had entered an *Alford* plea,[7] had moved "[a]lmost immediately" after deportation proceedings began to vacate his sentence and withdraw his *Alford* plea contending that "he had not understood the consequences of the plea because he did not realize that he was subject to deportation based on [his] misdemeanor convictions." *Id.* at 37.

The *Russell* Court identified three factors that should guide courts when assessing whether to permit a defendant to withdraw a plea after the sentence has been imposed. First, the court should consider "the strength of the defendant's reason for withdrawing the plea, including whether the defendant asserts his innocence of the charge." *Id.* at 39 (citations omitted). Second, the court should determine "the possible existence of prejudice to the government's case as a result of the defendant's untimely request to stand tri-

---

**6.** Pursuant to Rule 11, "[a] defendant may withdraw a plea of guilty . . . (1) before the court accepts the plea, for any or no reason; or (2) after the court accepts the plea, *but before it imposes sentence . . . .*" if the court rejects the plea agreement or if "the defendant can show a fair and just reason for

requesting the withdrawal." Fed.R.Crim.P. 11(d) (emphasis added).

**7.** Pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), a defendant is not required to acknowledge actual culpability to enter a guilty plea.

al." *Id.* (citations omitted). Third, the court "must consider whether the defendant's misunderstanding of the collateral consequences of the plea is the result of misleading statements by governmental authorities or the defendant's own ignorance." *Id.* The government does not specifically address the *Russell* factors. Rather, the government's opposition to all of the defendant's positions is directed solely to the two factors evaluated when assessing whether a criminal defendant was constitutionally denied effective assistance of counsel. In so doing, however, the government does indirectly address, at least in part, the defendant's Rule 11 challenge.

While the first *Russell* factor does not weigh heavily in the defendant's favor, as he does not proclaim his innocence of the offense to which he pled guilty, the second and third factors support permitting the defendant to withdraw his guilty plea and have his sentence vacated. As to the second factor, the government does not allege that it would be prejudiced by the defendant's withdrawal of his guilty plea. In fact, the government's opposition does not even address this factor. Regarding the third factor, the defendant argues that his "misunderstanding of the collateral consequences of [his] plea" is the result of misleading statements made to him by the prosecutor and the Court. According to the defendant's declaration that accompanied his motion, he was informed by the Assistant United States Attorney ("AUSA") before he entered his guilty plea that mail fraud was not a deportable offense and, at the sentencing hearing, the AUSA stated that defendant would be entitled to a "meaningful hearing" before he could be deported. Def.'s Mem. at 10.

And when the defendant informed the Court that he was not a United States citizen, the following exchange occurred at the defendant's sentencing:

> The Court: Oh, you're not a citizen. Actually, you face deportation, then, also, don't you? Is that correct?
>
> Mr. Ambrosino: I think that that is something he'll face. He'll be entitled to a hearing.
>
> The Court: Right. There's a chance of deportation. You're aware of that, aren't you?
>
> Mr. Singh: I didn't know that, your honor.
>
> The Court: Well, I don't know if I had mentioned that during the plea colloquy or not. I mean, I do in cases in which I'm aware that someone is not a citizen of this country. If I did not mention that, then I will tell you now that, as a result of your plea of guilty, there's a chance—I don't know whether they will—that the immigration department will deport you. There's that chance that you could face. There is that chance that you face deportation. So, you know, I just, I have an obligation to inform you of that. Do you understand that?
>
> Mr. Singh: Yes, Your Honor.
>
> The Court: All right, do you still want to proceed with your guilty plea?
>
> Mr. Singh: Your Honor, I did, but it's in front of you and it would be hypocritical for me to say that I didn't.

Transcript of Sentencing dated December 14, 2001 ("Sent.Tr.") at 17–18. Thus, it is clear that both the presiding Judge and the AUSA misinformed the defendant that there was only a probability of deportation, when in fact it was an absolute certainty.[8]

---

8. Furthermore, defendant notes that the court also erroneously stated that it would recommend to the Bureau of Prisons that the defen-

dant serve time in a boot camp, because participation in such a program would eliminate a significant amount of time from the defen-

The government counters that the defendant was not "completely uninformed about the *possible* immigration consequences of his plea...." Gov.'s Opp'n at 7 (emphasis added). Specifically, the government points to the representations made by the AUSA in his affidavit:

Upon learning Mr. Singh's immigration status, I informed him that it was my understanding that anyone who pleaded guilty to a felony punishable by over one year in prison was eligible for deportation. We explained that the immigration issues were exclusively within the jurisdiction of the Immigration and Naturalization Service ("INS") and the U.S. Attorney's Office had no part in INS's decision or action....

At no time did I make any promise to Mr. Singh or his attorney concerning the immigration implication of Mr. Singh's plea deal. Furthermore, I never told Mr. Singh or his attorney that he would not be deported if he pled guilty to a mail fraud charge.

AUSA's Affidavit ¶¶ 5, 7. These representations did not reflect the reality that deportation was certain, and the mis-impression that it was not was solidified by the AUSA's subsequent statement that there would be a meaningful hearing before deportation would occur.

In *Russell*, the prosecutor told the defendant and the court that if Russell "were convicted under the felony count ... he might be subject to deportation, which would not be the case if he took the misdemeanor...." 686 F.2d at 41. The Circuit Court concluded that

the comments of the [AUSA] during Russell's plea proceedings were a clear misstatement of the law; accordingly, Russell's plea cannot be considered vol-

untary under Rule 11. The serious consequences of involuntary deportation ... clearly demonstrate how the threat of deportation could be abused during plea negotiations. It can readily be imagined that some resident aliens might prefer to avoid even the risk of deportation rather than stand trial for crimes of which they believed themselves innocent. Although it may be permissible for prosecutors to discuss deportation consequences with defendants when their understanding of the law is accurate ... the practice cannot be tolerated when the prosecution's advice is erroneous, no matter how well intended. The government may not be required to inform defendants of collateral plea consequences such as deportation, but it does have an obligation not to mislead them. Because the taking of Russell's plea was so clearly tainted by the possibility that he had been confused by the government about the consequences of pleading to a misdemeanor rather than felony charges, Russell's guilty plea must be vacated. The government remains free, of course, to bring Russell to trial for the offenses for which he was originally indicted.

*Id.; see also United States v. Briscoe*, 432 F.2d 1351, 1354 (D.C.Cir.1970) ("Calculations of the likelihood of deportation may thus rightly be included in the judgment as to whether an accused should plead guilty, and any actions by Government counsel that create a misapprehension as to that likelihood may undercut the voluntariness of the plea.").

Here, it is clear there was a misunderstanding by the AUSA, the defendant's attorney who remained silent when the

---

dant's sentence, although in reality defendant was not eligible for such a program due to his immigration status because he is subject to

immediate deportation. Sent. Tr. at 12; Declaration of Philip Singh ("Singh Decl.") ¶ 4.

defendant was being misinformed, and the presiding judge, as to the deportation consequences of defendant's guilty plea. Although it appears that the government is correct that the defendant knew there was a possibility of deportation, he was clearly misled into believing that it was a mere possibility, as compared to an absolute certainty. *Cf. Briscoe*, 432 F.2d at 1354 (denying defendant's motion to vacate his sentence where he contended that he desired to be deported and had stated that he had been told that a third conviction would result in deportation. The court concluded that "the prosecutor's advice [as to the INS' policy, which, the court noted, was not inaccurate] did not significantly affect the defendant's decision to plead guilty."). Accordingly, the Court will vacate the defendant's guilty plea and sentence, which the Court concludes is mandated by *Russell*.[9]

### III.  Conclusion

For the reasons set forth above, the Court concludes that defendant's motion to vacate his guilty plea and sentence must be granted.  Having concluded that defendant's motion must be granted on the ground that his plea was not knowingly and voluntarily entered, the Court need not address defendant's ineffective assistance of counsel claims.

**SO ORDERED** on this 24th day of February, 2004.

### *ORDER*

In accordance with the Court's ruling as expressed in the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that the defendant's Motion to Vacate, Set Aside or Correct Sentence is granted.  It is further

**ORDERED** that the defendant's guilty plea and sentence shall be vacated.  It is further

**ORDERED** that case number 03–178 is dismissed.[10]  It is further

9.  Because the Court concludes that it must afford the defendant the relief he requests because of the factual circumstances present in this case under existing Circuit authority, it declines his counsel's effort to obtain a ruling that certainty of deportation is a direct, rather than a collateral consequence of pleading guilty.  Furthermore, the case principally relied on by defendant, *United States v. Couto*, 311 F.3d 179 (2d Cir.2002), for the proposition that deportation should be considered a direct consequence of a guilty plea does not support that proposition.  Rather, the *Couto* Court concluded that because Couto's attorney had affirmatively misled her into believing there were things that could be done to avoid deportation, despite the fact that amendments to the Antiterrorism and Effective Death Penalty Act and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 now mandate that "an alien convicted of an aggravated felony is automatically subject to removal and no one—not the judge, INS, or even the United States Attorney General—has any discretion to stop the deportation[,]" defense counsel's performance was ineffective and thus Ms. Couto's plea was

not voluntarily entered. *Id.* at 190.  In fact, although the *Couto* Court said that "[o]n its face, [d]efendant's argument is persuasive, and ... deserves careful consideration," the Court explicitly declined to address whether such deportation consequences are a direct consequence of a plea and must be included in the court's Rule 11 colloquy. *Id.* at 190–91 ("[B]ecause the circumstances of this case allow its resolution without taking up this difficult question, we need not, and hence do not, address it further.").  Moreover, the *Couto* Court recognized that the Fifth, Sixth, and Ninth Circuits have expressly "declined to reconsider their prior holdings on this point." *Id.* at 190 (citing *El–Nobani v. United States*, 287 F.3d 417, 421 (6th Cir.2002), *cert. denied* 537 U.S. 1024, 123 S.Ct. 535, 154 L.Ed.2d 435 (2002); *United States v. Amador–Leal*, 276 F.3d 511, 516–17 (9th Cir.2002), *cert. denied* 535 U.S. 1070, 122 S.Ct. 1946, 152 L.Ed.2d 849 (2002); *United States v. Gonzalez*, 202 F.3d 20, 28 (1st Cir.2000)).

10.  The Court has dismissed defendant's civil case.

**ORDERED** that the defendant shall be detained until further order of the Court.

**SO ORDERED** on this 24th day of February, 2004.