## STATE v. CLIFFORD L. JUDD.

152 N. W. (2d) 724.

August 18, 1967—No. 39,692.

*C. Paul Jones*, State Public Defender, and *Murray L. Galinson*, Assistant State Public Defender, for appellant.

*Douglas M. Head*, Attorney General, *Gerard W. Snell*, Solicitor General, and *Donald A. Gray*, County Attorney, for respondent.

MURPHY, JUSTICE.

This case is before us on appeal from a judgment of conviction entered pursuant to a plea of guilty to an information charging defendant with having taken indecent liberties with his 4-year-old daughter in violation of Minn. St. 617.08. Numerous errors are alleged, the principal one being that the plea "was not intelligently made with full understanding of the nature of the offense, of his Constitutional Rights and of the consequences of the plea." It is also asserted that defendant's plea of guilty was induced by threats and representations; that he was deprived of his right to effective aid and assistance of counsel; and that the prejudice of the trial court deprived him of due process.

We have carefully examined the file in this case, which includes the proceedings before the district court as well as the transcript of the preliminary hearing accorded defendant. At the preliminary hearing, two of defendant's sons—Lloyd Judd, age 16, and Gaylord Judd, age

15—testified with particularity as to two instances when they observed their father through a hole in the floor of their second-story bedroom engage in unnatural and indecent acts with the 4-year-old child. On March 2, 1964, defendant appeared in district court for arraignment and entered a plea of not guilty to the information, after which the case was set for trial. The trial commenced on March 18, 1964. After the jury was selected and had taken their oath, defendant informed the court that he desired to change his plea from not guilty to guilty. The following proceedings took place:

"THE COURT: Mr. Judd, I will ask you if you desire to change your plea of not guilty to the crime of indecent assault on which we have started trial to a plea of guilty?

"DEFENDANT: Yes, Your Honor.

"THE COURT: What is your plea now to the Information which was read to you at the time of your arraignment, guilty or not guilty?

"DEFENDANT: Now, you mean?

"THE COURT: What is your plea now?

"DEFENDANT: Guilty.

\* \* \* \* \*

"THE COURT: I assume that we should ask the defendant the statutory questions and perhaps have a presentence investigation.

"MR. FLORA [counsel for defendant]: I believe that a presentence investigation would be in order. The defendant himself realizes he needs some help and possibly—

"THE COURT: You mean help by which way?

"MR. FLORA: Psychiatric help and possibly a presentence investigation would help in that case.

"THE COURT: Is the defendant willing to be sworn and answer the statutory questions?

"DEFENDANT: Yes, Your Honor."

Defendant went on to testify that he was 49 years of age, that he had not finished the fourth grade, and that he had worked most of his life as a laborer. He served two periods in the Army and on the first occasion was separated from service by a "Section 9 Discharge \* \* \*, not rec-

ommended for reenlistment." He explained that this discharge arose from the fact that he became involved with a 17-year-old girl. The precise nature of the difficulty was not explained. It appears that he reenlisted in the Army sometime in 1941 or 1942 and served as a truck-driver, and on his second separation received an honorable discharge. After World War II he married and moved to the State of Washington, where he worked for the Boeing Aircraft Company and where the children were born. He returned to Minnesota about 1962 or 1963 with his family. He admitted that prior to returning to Minnesota an incident occurred in Washington with relation to the same daughter. He testified:

"I couldn't tell you just what was done because I asked her—my little girl told me that they had gone to a doctor and to a lawyer but so help me my wife wouldn't tell me what the lawyer said and she did say—she told me then that she had taken the little girl to the doctor; that she was irritated and the doctor told her that—she told me that the doctor told her that it appeared that she could have been meddled with, but at the same time—meddled, the word she used to me."

The offense with which defendant is here charged occurred after the family took up residence in Minnesota.

After this examination the court deferred sentence pending investigation and report by the probation officer. On May 8, 1964, defendant appeared before the district court for sentence. He was again represented by counsel. Prior to sentence, the court called defendant's attention to the fact that the probation report indicated that defendant still claimed to be innocent. The court asked defendant if this statement was consistent with his plea of guilty and his admissions of guilt to the county attorney and the sheriff. In his statement to the probation officer, defendant said:

"* * * I actually do not know of doing this crime. The only thing that—that gives me the impression that possibly I could have done it is that knowing my boys' life history they are not normally liers and it's awful hard for me, a father, to get up in Court and call my boys a lier when I know by their testimony and by their—the way they talk that

they have been coached and corrected in their statements, as I know the way they talk normally."

In view of defendant's equivocal position, the trial court vacated the plea of guilty, remanded defendant to the custody of the sheriff, and set the case for trial. The next proceedings took place on May 11, 1964, after defendant had contacted the judge, advising that he wished to again change his plea. Pursuant to this request, he appeared before the court for the fourth time.[1] After withdrawal of his plea of not guilty for the second time, the trial court accepted the plea of guilty with the understanding that it was made with knowledge of the nature of the crime against him, voluntarily, and not under any promises or threats or coercion or duress of any kind.

---

[1] On May 11, 1964, the following proceedings took place: "Let the record show the following proceedings took place in chambers at Wadena, Minnesota on May 11, 1964 at 10 o'clock a.m. Those present were the defendant, Clifford L. Judd, his attorney, Paul E. Flora; Donald A. Gray, County Attorney; Deputy Sheriff Truog; Harry L. King, Clerk of District Court; Judge Rol E. Barron and Kenyon E. Rudd, Official Court Reporter.

"THE COURT: Well, gentlemen, I have been advised in this matter which is the State of Minnesota versus Clifford L. Judd, that Mr. Judd who appeared before the Court on the 8th day of May 1964 and asked to change his plea of GUILTY to a plea of NOT GUILTY and stand trial on the charge; I have been advised that he now desires to enter a plea of GUILTY. Is that correct Mr. Judd?

"DEFENDANT: Yes, Your Honor.

"THE COURT: And do you have something in writing with you?

"DEFENDANT: I hope that is satisfactory.

"(Whereupon the defendant handed a letter to the Court.)

"THE COURT: Well, now, you understand, Mr. Judd, that this plea of GUILTY is final?

"DEFENDANT: Yes, sir.

"THE COURT: And you are not making it with any reservations of any kind?

"DEFENDANT: No, sir.

"THE COURT: And it has not been made under any promises or threats or coercion or duress of any kind?

"DEFENDANT: No.

"THE COURT: And how do you now plead to the charge—

The principal thrust of defendant's claim of error is that his equivocal conduct throughout his appearances before the trial court indicates that he was not aware of the elements of the offense with which he was charged.

While it is true that the trial court did not go into the specific details of the offense with which defendant was charged when the plea was accepted, it is apparent from the entire proceedings that defendant was fully informed of the elements and nature of the offense charged in the information. He had discussed it with the county attorney, the sheriff, the probation officer, and with his attorney. The nature and character of the offense was explained in the trial proceedings which were terminated after the jury was sworn. The records indicate that the attorney spent a great deal of time with defendant, both in and out of court. According to the district court records, the county paid his attorney for 9 days of service in connection with this case.

This court has, in numerous recent cases, discussed the law as it bears upon the requirement that a plea of guilty be made voluntarily and understandingly and the duty of the trial court to insure that defendant is informed of the nature of the crime with which he is charged so that the plea is entered with knowledge and appreciation of its consequences. State ex rel. Dehning v. Rigg, 251 Minn. 120, 86 N. W. (2d) 723; State v. Jones, 267 Minn. 421, 127 N. W. (2d) 153; State ex rel. Lacklineo v. Tahash, 267 Minn. 237, 126 N. W. (2d) 646; State ex rel. Becker v. Tahash, 265 Minn. 458, 122 N. W. (2d) 100, certiorari denied, 375 U. S. 875, 84 S. Ct. 167, 11 L. ed. (2d) 121; State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785; 21 Am. Jur. (2d) Criminal Law, §§ 484 to 489; 5A Dunnell, Dig. (3 ed.) §§ 2441 to 2441c; A.B.A. Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (tentative draft), §§ 1.4 and 1.5.

In Jones we said (267 Minn. 427, 127 N. W. [2d] 157):

"DEFENDANT: Guilty, Your Honor.

"THE COURT: Just a moment—of taking indecent liberties with your daughter, guilty or not guilty?

"DEFENDANT: GUILTY.

"THE COURT: Plea of GUILTY is entered."

"It is well recognized that a plea of guilty, which is a confession in open court, should be received with caution. This is particularly true as it applies to the graver felonies. The plea should not be entered where it is made by one who has not been advised of the nature and elements of the offense charged; nor should the plea be induced by misapprehension or ignorance. No plea should be accepted where it appears doubtful that it is not made intelligently and understandingly."

Even if it be conceded that defendant is not a very intelligent person, it is difficult to seriously accept the claim that he did not understand the nature of the charge placed against him. There was nothing obscure or difficult to understand about the wrongful conduct with which he was charged—the details of it had been discussed in his presence at the preliminary hearing with the probation officer and other officials and it may be assumed that during the 9 days of service performed by his attorney, including conferences, the details of the charge were thoroughly discussed. Moreover, the trial court gave him full opportunity to consider his plea, and on two occasions permitted him to withdraw pleas of not guilty so that he could take his chances with a jury if he so chose. This case is distinguishable from State v. Jones, *supra*, and State ex rel. Dehning v. Rigg, *supra*. In those cases statements made by respective defendants at the time their pleas of guilty were entered manifested to the court that each might have a valid defense to the accusation against him, thus imposing upon the court, in each instance, the duty of entering a plea of not guilty in his behalf. Here, the trial court, out of an abundance of caution, permitted defendant on two occasions to withdraw pleas of guilty before finally accepting the plea upon which defendant was sentenced. State v. Anderson, 270 Minn. 411, 134 N. W. (2d) 12.

It is unnecessary to discuss the other points raised by the appeal. The record itself belies the claims of defendant that he did not receive effective aid and assistance of counsel and that he was denied due process by the prejudice or bias of the trial court. If at one or two points in the proceedings the trial court did manifest some impatience, that may be explained by defendant's conduct.

Affirmed.