STATE of Minnesota, Respondent,

v.

Israel Roque LOPEZ, Appellant.

No. C4-85-1039.

Court of Appeals of Minnesota.

Jan. 7, 1986.

Review Denied Feb. 14, 1986.

Hubert H. Humphrey, III, Atty. Gen., Saint Paul, Thomas L. Johnson, Hennepin Co. Atty., Beverly J. Wolfe, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Heard, considered and decided by HUS-PENI, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

FOLEY, Judge.

Israel Lopez, a Cuban refugee, appeals from a May 23, 1985 post-conviction order denying his motion to withdraw his guilty plea. Lopez pleaded guilty to a lesser charge of possession of marijuana with intent to distribute under a plea negotiation. He was sentenced on May 8, 1984. As a result of this case and a related case pending in federal court,[1] deportation proceedings were initiated by the Immigration and Naturalization Service (INS). On April 23, 1985, Lopez moved to withdraw his guilty plea, alleging that he was not properly advised of immigration consequences prior to his entering into the plea bargain and subsequent plea. Following a May 1, 1985 post-conviction hearing, the court denied the motion. We affirm.

## FACTS

*The Charged Offense.* Appellant was charged in a two-count complaint with (1) unlawful sale of a schedule 1 controlled substance—marijuana, and (2) possession of a short-barreled rifle. Minn.Stat. §§ 152.01, subds. 4 and 9, 152.02, subd. 2(3), 152.09, subd. 1(1) and 152.15, subd. 1(2) (1982). The complaint was filed in Hennepin County District Court on November 18, 1983 following a search of appellant's apartment by undercover policemen. While in the apartment, appellant stated:

"This is my apartment, everything in it is mine."

*The Guilty Plea.* Pursuant to a plea negotiation, appellant entered a plea of guilty to the lesser-included charge of possession with intent to distribute marijuana at a hearing on March 21, 1984. At that hearing appellant was represented by Richard Trachy of the Hennepin County Public Defender's Office. Luis Borges, a Spanish-speaking court interpreter, was present to translate the proceedings to appellant.

In reference to the factual basis for his guilty plea, appellant admitted that he had 34 marijuana cigarettes in his apartment on the date of the arrest and that he intended to distribute them to other people present in the apartment. Appellant was aware that distribution of marijuana was a crime in Minnesota. Appellant further submitted a written plea petition as part of his guilty plea. Paragraph 27 of the petition stated:

*My attorney has told me and I understand that if you are not a citizen of the United States, conviction of a crime may result in deportation, exclusion from admission to the U.S.A., or denial of naturalization.* (emphasis supplied).

Through the interpreter, appellant acknowledged that he had gone over the petition a month earlier with his attorney. Although a court interpreter was not present at that time, appellant stated at the March 21 hearing that he was able to understand some English. The following exchange then took place:

MR. TRACHY: Now, this morning, you and I sat down with Mr. Borges, and we went over this form again. Is that correct?

THE INTERPRETER: Yes.

MR. TRACHY: Okay. And Mr. Borges explained and went through all of this in Spanish with you?

THE INTERPRETER: Yes, he did.

1. Appellant was charged in federal court on the firearms charge and was convicted of Felon in Possession of A Dangerous Weapon in violation of 18 U.S.C. § 1202 following a trial before the Honorable Diana Murphy, United States District Judge. On July 31, 1985, he received a sentence of two years. The matter is under appeal. *See United States v. Lopez,* File CR 4–85–27(1) (D.Minn.).

MR. TRACHY: Do you feel you understand all of your rights that you have in this proceeding as they're set forth in this document here?

THE INTERPRETER: Yes, he does.

On May 7, 1984, appellant was sentenced to a stayed one-year and one-day sentence with two years probation to include 60 days in the workhouse. Pursuant to the plea negotiation, Count II of the complaint was dismissed.

*Motion to Withdraw Guilty Plea.* On April 15, 1985, appellant filed a motion to withdraw his guilty plea, alleging that he was not adequately informed of immigration consequences prior to his plea.

A post-conviction hearing was held on May 1, 1985. At the hearing, appellant testified through interpreter Varessa Saenz that he was originally from Cuba and that he had entered the United States in April 1980 as a political refugee. Appellant further explained that while he could read and write Spanish perfectly, he could not read or write English. He again acknowledged that he did speak some English.

Appellant claimed that he was unaware of any deportation consequences resulting from his guilty plea. In particular, he did not recall discussing paragraph 27 of the guilty plea petition with his attorney or with interpreter Borges, notwithstanding his statement at the time the plea was entered. Borges testified and recalled a specific meeting in Trachy's office when he explained the plea negotiation to appellant. He could not remember whether every question on the petition was specifically discussed with appellant on the morning of his guilty plea.

Trachy also testified following appellant's waiver of the attorney-client privilege.

A. [by Mr. Trachy] * * * On February 17th of 1984, * * * outside the courtroom * * * we sat on the bench and discussed the plea negotiation and filled in the form. That was with the two of us. Nobody else.

Q. [by prosecutor] Okay. And all of those conversations would last at least 15 minutes?

A. Well, going over the Petition lasted some time, because we had to go over each question individually and I had to make sure he understood each one, and we did that. That probably took a good 20 minutes to a half an hour.

Q. And during those conversations * * the topics were twofold. The consequences of the plea and—and/or the defenses that could be raised in rebuttal to the State's evidence. Is that not right?

A. Those were among the things that we talked about. One talks about a lot of things in preparing a defense. Those were among the things that we talked about.

Trachy continued:

We filled it out [February 17, 1984] without the interpreter. I was satisfied that Mr. Lopez understood sufficient English. I was able to communicate with him with respect to each of the questions, Your Honor.

I went through them individually and explained them to him and asked him if he understood each question. That is my practice. I always do that. I did that with Mr. Lopez.

When it came to Question No. 27 I made sure that he understood that we could make no promises regarding his immigration status and, in fact, none were made to him, so I did go over that with him.

On cross-examination, Trachy admitted that he had never contacted immigration officials to determine the precise deportation consequences to appellant, although he did recall informing appellant about the potential risks involved. Trachy further admitted that the deportation factor was not predominant in his mind: "It was a factor, it was there, we talked about it. I think both of us were more concerned with the other aspects of the negotiated offer."

During the course of the testimony, the court referred to a probation report which was prepared by Kathleen Halverson:

"Although [appellant] appears to be able to communicate adequately in the English language, * * * it did seem that language could become a barrier when he found it most convenient."

On May 23, 1985, the trial court issued its order and memorandum denying appellant's motion to withdraw his guilty plea. In denying relief, the trial court concluded:

[Appellant] did not convince this Court by a fair preponderance of the evidence that he was unaware of the immigration consequences of his plea. In fact the evidence was more than sufficient to indicate that he knew and was advised that criminal acts could serve as a basis for deportation.

## ISSUES

1. Was appellant's motion to withdraw his guilty plea untimely when made 11 months after sentencing?

2. Was appellant, a Cuban refugee, entitled to withdraw his guilty plea on grounds that he was not adequately advised of the immigration consequences prior to pleading guilty to a felony drug offense?

## ANALYSIS

■ 1. The appeal before us contains a procedural error. In *State v. Andren*, 358 N.W.2d 428 (Minn.Ct.App.1984) (Andren II), the defendant pleaded guilty to second-degree criminal sexual conduct on May 17, 1983 and was sentenced on November 18, 1983. He then moved to withdraw his guilty plea on January 11, 1984. We held that the defendant's motion was untimely under Minn.R.Crim.P. 15.05, subd. 1.

Here, appellant was sentenced on May 8, 1984. He did not move to withdraw his guilty plea until April 23, 1985, more than 11 months after sentencing. Appellant's motion to withdraw his guilty plea was untimely. Although we need not address the merits of this appeal, we have determined that various aspects of this case which center on the immigration consequences deserve discussion.

■ 2. On appeal from the denial of a motion to withdraw a guilty plea, the following standard of review applies:

A criminal defendant is permitted to withdraw a guilty plea following sentencing only upon proving "to the satisfaction of the court *that withdrawal is necessary to correct a manifest injustice."* Rule 15.05, subd. 1, Minn.R.Crim.P. The decision whether to permit a plea of guilty to be withdrawn is addressed to the sound discretion of the trial court. *Chapman v. State*, 282 Minn. 13, 162 N.W.2d 698 (1968). *Absent a clear abuse of discretion, the trial court's decision will not be disturbed on appeal.* *State v. Jacobs*, 292 Minn. 41, 192 N.W.2d 816 (1971).

The burden is on the petitioner at a post-conviction proceeding to prove by a preponderance of the evidence the facts which would warrant withdrawal of his guilty plea. Minn.Stat. § 590.04, subd. 3 (1983); *Hanson · v. State*, 344 N.W.2d 420, 423 (Minn.Ct.App.1984). *The scope of review is limited to determining whether there is sufficient evidence in the record to support the findings of the post-conviction court. Hanson; State v. Doughman*, 340 N.W.2d 348 (Minn.Ct.App.1983); *Kochevar v. State*, 281 N.W.2d 680, 687 (Minn.1979).

*Doughman v. State*, 351 N.W.2d 671, 674 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn., October 16, 1984) (emphasis supplied). Appellant claims that the record is void of evidence that he was informed of immigration consequences and that he understood these consequences. In short, he argues that since his plea was not voluntary, he was entitled to withdraw it "to correct a manifest injustice."

Appellant relies on *Edwards v. State*, 393 So.2d 597 (Fla.Dist.Ct.App.1981), *pet. for rev. denied*, 402 So.2d 613 (Fla.1981), and *Commonwealth v. Wellington*, 305 Pa.Super. 24, 451 A.2d 223 (1982), to support this contention. Both cases are distinguishable.

In *Edwards*, the court held that even though deportation consequences were col-

lateral to a guilty plea, failure by defense counsel to inform a defendant of those consequences would render the plea invalid. In *Edwards*, unlike the present case, the trial court summarily denied the defendant's motion. The case was remanded for an evidentiary hearing on issues pertaining to ineffectiveness of counsel, the defendant's knowledge of deportation consequences, and the causal relationship between those consequences and the guilty plea. Here, appellant was afforded a full evidentiary hearing, including the opportunity to cross-examine Richard Trachy, his attorney at the time the guilty plea was entered.

In *Wellington*, the court held that defense counsel's failure to inform the defendant of deportation consequences resulted in ineffective assistance of counsel and thus entitled the defendant to withdraw his guilty plea. In *Wellington*, however, it was uncontroverted that the defendant was not informed of deportation consequences. Here, while that fact was disputed, the trial court found against the appellant.

The characterization of deportation consequences as "collateral" to a guilty plea was established in *United States v. Parrino*, 212 F.2d 919 (2d Cir.), *cert. denied*, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954):

> [H]ere, the subject-matter of the claimed surprise was not the severity of the sentence directly flowing from the judgment but a *collateral consequence* thereof, *namely, deportability*.

*Id.* at 921 (emphasis supplied).

More recently, the D.C. Circuit outlined three factors for trial courts to consider when deciding whether to permit withdrawal of a guilty plea in cases involving immigration consequences:

> The first is the strength of the defendant's reason for withdrawing the plea, *including whether the defendant asserts his innocence of the charge.* * * * The second is the possible existence of prejudice to the government's case as a result of *the defendant's untimely request to stand trial.* * * * Finally, the trial court must consider whether the

defendant's misunderstanding of the collateral consequences of the plea is the result of misleading statements by *governmental authorities or the defendant's own ignorance.*

*United States v. Russell*, 686 F.2d 35, 39 (D.C.Cir.1982) (emphasis supplied). Utilizing this standard, the *Russell* court vacated the defendant's guilty plea when the record clearly established that the *prosecutor* misrepresented deportation consequences to the defendant during plea negotiations. In doing so, the court was careful to distinguish its earlier decision in *United States v. Sambro*, 454 F.2d 918 (D.C.Cir. 1971), where it held that a guilty plea was not rendered involuntary when based on *defense counsel's* erroneous conclusion that deportation consequences would not ensue.

In the present case, appellant made no assertion of innocence at the post-conviction hearing. Moreover, unlike *Russell*, appellant here claimed that his *own counsel* and not government authority failed to inform him of deportation consequences.

As the trial court correctly noted in its memorandum, the issue before it "appears to be more of a straight fact question than a legal problem." While the testimony was conflicting, the trial court was well within its discretion when it chose to rely in part on Trachy's testimony:

> [D]efendant's attorney testified at the hearing that he discussed possible immigration consequences with the defendant 'several' times. He further testified that he had no trouble communicating with the defendant in English over long periods of time.

Moreover, Trachy's testimony was partially corroborated by probation officer Halverson and interpreter Borges. Halverson stated in her report that it appeared appellant used the language barrier to his advantage when he found it convenient to do so. Borges testified: "He knows the street language, Your Honor. That's able to communicate certain things through his experience in daily life needs outside [sic]."

It is significant that appellant, through interpreter Borges, responded affirmatively at the guilty plea hearing when asked if he understood his rights at the time he signed the petition. At no time during this exchange did he claim less than full disclosure by his attorney or less than full understanding by himself in connection with the consequences of his plea.

None of the well-founded concerns in other jurisdictions apply to the present case. The trial court was in a better position to weigh the credibility of the witnesses, and its findings of fact will not be disturbed unless they are clearly contrary to the evidence. *City of Minneapolis v. Price*, 280 Minn. 429, 433, 159 N.W.2d 776, 779 (1968).

This court has held that when an attorney discusses with his client the case, the plea bargain and other options before a guilty plea is entered, a presumption arises that the defendant was adequately informed of his rights. *Doughman v. State*, 351 N.W.2d at 674, *citing, State v. Doughman*, 340 N.W.2d 348, 353 (Minn.Ct.App. 1983).

The record demonstrated that appellant failed to meet his burden of proof to allow withdrawal of his guilty plea. The trial court's finding that appellant was adequately informed of his rights is amply supported by the evidence.

### DECISION

Appellant's motion to withdraw his guilty plea was untimely when made over 11 months after sentencing. The trial court did not err when it denied appellant's request to withdraw his guilty plea.

Affirmed.