**Gary Elchanon BERKOW, petitioner, Appellant,**

**v.**

**STATE of Minnesota, Respondent.**

**No. C3–97–258.**

Court of Appeals of Minnesota.

Dec. 9, 1997.

Review Granted Feb. 19, 1998.

Eric Newmark, Birrell & Dunlap, Ltd., Minneapolis, for Appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, for Respondent.

Desyl Peterson, Minnetonka City Attorney, Rolf A. Sponheim, Assistant City Attorney, Minnetonka, for Respondent.

Considered and decided by WILLIS, P.J., and SCHUMACHER and FOLEY, * JJ.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn.

## OPINION

WILLIS, Judge.

Appellant Gary Berkow, a permanent resident alien who was not informed of possible immigration consequences of his guilty plea, appeals the district court's denial of his motion to withdraw the plea on grounds of manifest injustice and of his postconviction petition alleging that the plea was involuntary and that he was denied effective assistance of counsel. We affirm.

## FACTS

Gary Berkow was born in South Africa and came to the United States with his family in 1986 at age 12. Except for one vacation later that year, he has never returned to South Africa, and he has no relatives in the country, although his parents apparently still have friends there. Berkow is classified as a permanent resident alien.

In July 1991, Berkow and his roommate stole $162 worth of cigarettes from a convenience store promotional display while two of their friends were at the counter. Berkow was charged with misdemeanor counts of theft by swindle and receiving stolen property. His retained counsel did not ask Berkow about his citizenship status. In March 1992, Berkow agreed to plead guilty to the theft by swindle charge after approximately five minutes of discussion with his attorney. The form plea mentioned no possible immigration consequences. Berkow served nine days of a 69–day jail sentence, paid his fine, and successfully discharged his probation. In December 1992, Berkow pleaded guilty to a second misdemeanor count of discharging a firearm; he was not represented by counsel for that offense.

In 1993, Berkow and his family applied for naturalization. The family consulted an immigration attorney, who advised Berkow to withdraw his application because his convictions rendered him ineligible for naturalization for the succeeding five-year period and

Const. art. VI, § 10.

might give rise to deportation proceedings. He also noted, however, that if Berkow were found to be deportable, he could seek a form of collateral relief known as a 212(c) waiver.[1]

On October 10, 1995, Berkow pleaded guilty to felony counts of third-degree arson and receipt of stolen property, apparently arising from a single incident. Berkow was represented by new counsel, who informed him of the immigration consequences of a guilty plea but told him it should not be a problem because of the availability of 212(c) relief.

On December 5, 1995, the Immigration and Naturalization Service initiated deportation proceedings against Berkow. The order to show cause stated that Berkow was deportable under § 241(a)(2)(C) of the Immigration and Nationality Act, which allows deportation of an alien convicted of any offense related to firearms, and under § 241(a)(2)(A)(ii), which allows deportation following two convictions for crimes "involving moral turpitude," not arising from a single incident.[2] The order listed the theft by swindle and arson convictions as fulfilling the requirements of that section. In April 1996, Congress abolished 212(c) relief.

Berkow filed motions to set aside all of his guilty pleas; the motions were heard by three different judges. One district court allowed him to withdraw the plea in the firearm case because he was not represented by counsel. Another, in December 1996, refused to allow him to withdraw his plea in the arson case because he was represented by counsel who had informed him of the immigration consequences of the plea and because he theoretically could have applied for 212(c) relief before its abolition.

After a third district court denied Berkow's motion to withdraw his theft by swindle plea under Minn. R.Crim. P. 15.05, subd. 1, Berkow filed the instant action for post-conviction relief under Minn.Stat. § 590.01 (1996), arguing that the plea was constitu-tionally infirm because it was not intelligently made and that his counsel's failure to ask whether Berkow was a citizen had deprived Berkow of effective assistance of counsel. At the hearing, Berkow called his family's immigration lawyer as an expert witness. The attorney testified that, as a matter of immigration law practice, it would have been "unheard of" to apply for a 212(c) waiver before deportation proceedings had actually been commenced. He also testified that it was customary and accepted practice in the legal profession for criminal defense attorneys to advise clients about the immigration consequences of guilty pleas and stated that in his mind it is "malpractice per se" for any defense attorney not to inquire into a client's immigration status.

The district court denied Berkow's petition, holding that Berkow had failed to establish ineffective assistance of counsel, that deportation could not be considered a proximate consequence of his guilty plea to theft by swindle because a second offense was required, and that Berkow had not demonstrated that withdrawal of the plea was necessary to correct a manifest injustice. Berkow appeals this judgment, and we affirm.

## ISSUES

1. Did the district court err in holding Berkow's guilty plea to be intelligently made?

2. Did the district court err in finding that Berkow had failed to prove ineffective assistance of counsel?

3. Did the district court abuse its discretion in holding that Berkow had failed to demonstrate that withdrawal of his plea was required to correct a manifest injustice?

## ANALYSIS

Minnesota law provides two independent means by which a defendant may seek to set aside a guilty plea after sentencing. The first is a motion to withdraw the plea

1. According to the immigration attorney's testimony, a 212(c) waiver allowed an immigration judge, in his or her discretion, to allow an otherwise deportable permanent resident who had been in the country for over seven years to remain.

2. Section 241 of the INA is codified at 8 U.S.C. § 1251 (1996).

under Minn. R.Crim. P. 15.05, subd. 1, which allows withdrawal on grounds of "manifest injustice." The second is a petition for post-conviction relief under Minn.Stat. § 590.01, subd. 1 (1996), which provides an action where a defendant "claims that the conviction obtained * * * violated the person's rights under the Constitution or laws of the United States or of the state." If a plea is constitutionally invalid, it automatically meets the rule 15.05 manifest injustice standard. *See Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997) (stating that manifest injustice occurs if guilty plea is not accurate, voluntary, and intelligent).

The D.C. Circuit has articulated several factors to be considered in determining "manifest injustice" under the federal equivalent to rule 15.05. *United States v. Russell*, 686 F.2d 35, 39 (D.C.Cir.1982). *Russell* also involved a defendant who had not been informed of the immigration consequences of his plea. *Id.* at 37. The court ultimately decided that the prosecutor's misrepresentations had rendered the plea constitutionally invalid. *Id.* at 41; *see also id.* at 38 (distinguishing between "manifest injustice" standard for withdrawing plea and "voluntariness" standard for plea's initial validity). This court discussed the *Russell* factors in *State v. Lopez*, 379 N.W.2d 633, 637 (Minn. App.1986), *review denied* (Minn. Feb. 14, 1986). *Lopez* is a rule 15.05 case involving similar facts as *Russell*, but one in which the defendant did not allege constitutional defects. *Id.*

Although the district court here had already denied Berkow's motion to withdraw his plea under rule 15.05, in this postconviction proceeding both parties argued case law interpreting the "manifest injustice" standard in the district court, the court included some conclusions of law relevant only to Rule 15.05, and both parties argue manifest injustice issues on appeal. We therefore consider this appeal to be from both denial of a rule 15.05 motion and denial of a petition seeking postconviction relief on alternative theories

of involuntariness and ineffective assistance of counsel.

## I. Validity of Guilty Plea

In general, the judgment of a postconviction court is upheld absent an abuse of discretion. *Scruggs v. State*, 484 N.W.2d 21, 25 (Minn.1992). But, as in other matters, this court reviews de novo a postconviction court's determination of legal issues. *See Doan v. State*, 306 Minn. 89, 91, 234 N.W.2d 824, 826 (1975) (upholding factual findings where evidence existed to support them, but independently reviewing legal determination based on found facts); *see also Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984) (stating that appellate court does not defer to district court interpretations of law).

A plea of guilty is a waiver of several trial rights guaranteed by the Fifth and Sixth Amendments, and thus, to be valid as a matter of due process, must be voluntarily and intelligently made. *Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *see also State v. Kaiser*, 469 N.W.2d 316, 319 (Minn.1991). The district court has a duty of ensuring that a plea meets these requirements, but the court may presume that a defendant who has consulted with counsel is aware of his constitutional rights. *State v. Judd*, 277 Minn. 415, 419–20, 152 N.W.2d 724, 727 (1967); *State v. Chounard*, 299 Minn. 216, 217, 216 N.W.2d 908, 909 (1974). A plea is "intelligently" entered if the defendant "understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." *State v. Trott*, 338 N.W.2d 248, 251 (Minn.1983). "A plea of guilty * * * should not be accepted * * * [when] induced by * * * ignorance." *Coolen v. State*, 288 Minn. 44, 48, 179 N.W.2d 81, 84 (1970).

The question of whether a non-citizen's guilty plea can be "intelligent" when the immigrant is not aware of the possible consequence of deportation is one of first impression in Minnesota.[3] The only previous cases

3. This court considered the issue last year in the unpublished decision of *Phay v. State*, No. C5–96–106, 1996 WL 722110 (Minn.App. Dec. 17, 1996). Because the *Phay* opinion was not published, we do not rely on it as precedent. *See* Minn.Stat. § 480A.08, subd. 3(c) (1996).

in which this issue has arisen involved a fact dispute as to whether counsel had actually informed the defendant of the risk of deportation, and this court deferred to the district court's finding that the defendants had been informed. *See Lopez*, 379 N.W.2d at 637; *see also State v. Aviles–Alvarez*, 561 N.W.2d 523, 527 (Minn.App.1997), *review denied* (Minn. June 11, 1997). Here, however, Berkow's trial counsel admits that he never discussed immigration issues.

Several federal appellate courts have held that a defendant need only be informed of the "direct" consequences of a plea imposed by the sentencing judge, rather than of "collateral" consequences, such as deportation. *See, e.g., United States v. Sambro*, 454 F.2d 918, 922 (D.C.Cir.1971); *United States v. Parrino*, 212 F.2d 919, 921 (2nd Cir.1954), *cert. denied*, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954). These courts, and state courts that have adopted the federal rule, have noted that criminal convictions carry a broad range of collateral consequences that vary widely in foreseeability and severity. *See, e.g., Commonwealth v. Frometa*, 520 Pa. 552, 555 A.2d 92, 93 n. 1 (1989) (listing examples ranging from loss of voting rights to damage to credit rating). But Minnesota reserves the right to require greater protection for individual rights than the federal constitution mandates. *Doe v. Gomez*, 542 N.W.2d 17, 30 (Minn.1995). Some collateral consequences of conviction may be so severe, and so predictably imposed, as to affect virtually any defendant's "calculations about the costs and benefits of standing trial," raising questions as to whether a plea in which the defendant was unaware of the consequence could truly be considered "intelligently made" in any commonly understood sense. *Russell*, 686 F.2d at 40.

■ But wherever the bright line between direct and collateral consequences may ultimately be drawn, the threat of deportation in this case must be considered a collateral consequence of Berkow's plea. The district court held that deportation could not be considered a proximate consequence of Berkow's theft by swindle conviction because that conviction alone did not render him deportable; a second offense was required.

We agree that the Constitution does not mandate that a court inform a defendant of the possibility of deportation when that possibility depends on the supplementary intervening factor of the defendant committing another crime subsequent to the plea. To hold otherwise would, in effect, require a court to assume that every defendant "calculat[ing] * * * the costs and benefits of standing trial" intends to recidivate. *Id.; cf. State v. Garritsen*, 371 N.W.2d 251, 252–53 (Minn.App.1985) (holding that guilty plea not rendered defective because defendant was not informed that, following commission of additional crimes in South Dakota, his conviction could be used to support sentencing under that state's habitual offender statute). Because of the ground on which we decide this case, we need not, and do not, express any view as to whether Berkow's plea would have been valid if it had rendered him immediately deportable or whether the availability of 212(c) relief affects the analysis.

## II. Ineffective Assistance of Counsel

■ Minnesota has adopted the federal standard for ineffective assistance of counsel, which requires a defendant to prove (1) that counsel's representation "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gates v. State*, 398 N.W.2d 558, 561 (Minn.1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). A reviewing court applies an abuse of discretion standard to a district court's findings on a postconviction claim of ineffective assistance of counsel. *State v. Rainer*, 502 N.W.2d 784, 787–88 (Minn.1993).

■ Where a guilty plea is concerned, a defendant meets the prejudice prong of the *Gates* test by establishing a reasonable probability that, but for counsel's errors, he would not have pleaded guilty, but rather would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). The district court found that Berkow had "failed to dem-

onstrate by a preponderance of evidence that but for the alleged errors of his counsel, the result of a trial would have been different." The court applied the wrong standard; the inquiry is not into the result of a trial, but whether a trial would have occurred. But we conclude that the district court did not err in holding that Berkow had failed to establish that his counsel's performance fell below an objective standard of reasonableness.

Federal and state court decisions vary widely as to whether an attorney's failure to inform a defendant of immigration consequences of a guilty plea constitutes ineffective assistance of counsel. *See, e.g., Williams v. State*, 641 N.E.2d 44, 49 (Ind.Ct. App.1995) (holding that failure to inform defendant is ineffective assistance of counsel); *Frometa*, 555 A.2d at 93 (holding that failure to inform defendant is not ineffective assistance of counsel); *In re Amendments to Florida Rules of Criminal Procedure*, 536 So.2d 992, 992 (Fla.1988) (requiring court to inform defendant of immigration consequences, superseding *State v. Ginebra*, 511 So.2d 960, 960 (Fla.1987) (holding that counsel's assistance not ineffective)); *People v. Pozo*, 746 P.2d 523, 529 (Colo.1987) (stating that counsel's assistance is ineffective if counsel knew or had reason to know client was not citizen); *People v. Huante*, 143 Ill.2d 61, 156 Ill.Dec. 756, 762, 571 N.E.2d 736, 742 (1991) (ineffective assistance only if counsel actively misrepresented deportation consequences); *Accord, United States v. Santelises*, 509 F.2d 703, 704 (2nd Cir.1975); *State v. Arvanitis*, 36 Ohio App.3d 213, 522 N.E.2d 1089, 1095 (1986) (applying case-by-case determination based on effect of plea); *United States v. Gavilan*, 761 F.2d 226, 228–29 (5th Cir.1985) (finding defendant failed to show sufficient prejudice under circumstances).

▮ Given the absence of Minnesota precedent and the wide variation in other jurisdictions' responses to the issue, we conclude that the district court did not abuse its discretion in finding that Berkow failed to prove that his counsel's assistance fell below an objective standard of reasonableness. The

only expert witness in this case practices immigration law, rather than criminal defense law, and his testimony appeared to address present-day legal standards, rather than those applicable when Berkow made his plea in 1992, before the abolition of 212(c) relief. We affirm the district court's finding that Berkow failed to establish ineffective assistance of counsel.

### III.  Manifest Injustice

▮ A district court's ruling on a rule 15.05 motion is reviewed only for abuse of discretion. *See Lopez*, 379 N.W.2d at 636.

As noted, the D.C. Circuit in *Russell*, in dictum, identified "several considerations that should guide district court exercise of discretion" in determining "manifest injustice." *Russell*, 686 F.2d at 39. Those factors were the strength of the defendant's reasons for withdrawing the plea, including claims of innocence; the possibility of prejudice to the government's case resulting from an untimely trial; and, where a misunderstanding of the collateral consequences of a plea is at issue, whether the government contributed to that misapprehension through misleading statements. *Id.* This court discussed the *Russell* factors in *Lopez*, but also in dictum; the court decided *Lopez* on the grounds that the defendant's motion was untimely[4] and that in any event he actually had been informed of the immigration consequences of his plea. *Lopez*, 379 N.W.2d at 636–37. This is the first case in which the issue of manifest injustice in the immigration context is properly before the court.

▮ *Russell* summarized federal precedent relevant to the facts of that case, but we do not adopt its discussion as a strict three-pronged manifest injustice test. Where a determination of manifest injustice is not made as a matter of law, as in the case of a constitutional violation or a breach of a plea agreement by the state, the plain meaning of the phrase indicates that a determination must be an equitable balancing of interests based on the totality of the circumstances.

---

4. The district court rejected the state's argument that Berkow's motion was untimely, and the

state does not challenge this ruling on appeal.

*Cf. People v. Kadadu,* 169 Mich.App. 278, 425 N.W.2d 784, 787 (1988) .(finding no abuse of discretion where district court, on equitable grounds, allowed defendant who had not been informed of immigration consequences to withdraw plea). We interpret *Russell* to provide an illustration of such a balancing inquiry.

As in *Russell,* the inquiry begins with the strength of the defendant's reasons for seeking to withdraw the plea. 686 F.2d at 39. This inquiry includes claims of innocence where applicable, as on the facts of *Russell.*[5] However, while a claim of innocence strengthens a defendant's case, it is not a prerequisite to seeking to withdraw a plea on grounds of manifest injustice.

In general, a claim of "manifest injustice" implies that, if the plea is not withdrawn, the defendant will suffer some hardship. The D.C. Circuit wrote in *Russell* that

> although deportation is not a "direct" consequence of a plea * * *, it is difficult to imagine a collateral consequence that would be more compelling for purposes of showing * * * "manifest injustice" * * *.

686 F.2d at 40. A claim of hardship might be strengthened in a particular case by an immigrant's family circumstances, by hazardous conditions or the possibility of persecution in the defendant's home country, or where, as here, the defendant immigrated with his family as a child.

The defendant's ability to avoid the hardship is also relevant. Here, Berkow was unaware that the plea he now seeks to withdraw foreclosed his ability to become a naturalized citizen, and the 212(c) relief that might have affected his calculations at the time of the plea no longer exists. But, Berkow became eligible for deportation only upon pleading guilty to another offense, which he committed at a time when he was aware of the deportation risk his previous convictions had created. Thus, although Berkow could not have predicted the repeal of 212(c) relief, he does bear responsibility for his current situation.

We consider the second *Russell* factor, the possibility of prejudice to the state's case from an untimely trial, as an aspect of a larger inquiry into the state interests against which the court must balance the defendant's claim of hardship. 686 F.2d at 39. Here, the state has made a persuasive showing of prejudice; the state is unable to locate the original witnesses and the physical evidence has been destroyed. But Berkow has already served his entire sentence, and it is doubtful that the state could obtain a significant additional sentence if it now tried Berkow and convicted him of the 1991 offenses.

The state's primary interest here appears to be in maintaining the conviction on Berkow's record. Maintaining records of any offense serves interests in calculating appropriate sentencing for subsequent offenses and in alerting the public to possible dangers. The state may have particularly weighty interests in maintaining records of certain convictions, such as felonies, violent or particularly dangerous crimes, offenses that form part of a larger behavior pattern, or offenses relevant for another legal purpose such as civil commitment. Here, Berkow's offense was a misdemeanor and not of a nature that gives rise to any critical state interests.

The third factor noted in *Russell* was that, in that case, the prosecutor had misrepresented the deportation consequences to the defendant. 686 F.2d at 41. This is a highly unusual circumstance that weighs strongly in a defendant's favor when present, but we do not consider its absence to have any bearing on this case. While the state's impropriety in conducting the plea process is obviously relevant to an equitable inquiry, its proper conduct is simply a minimal expectation of the criminal justice system.

In summary, where a defendant seeks to withdraw a guilty plea on grounds of manifest injustice, the task of the court is to balance the defendant's claim of hardship, and of innocence where applicable, taking note of any aggravating or mitigating factors in the conduct of the defendant or the state,

5. In *Russell,* the defendant had pleaded guilty under *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), thus accepting punishment without having admitted to committing the offense, and consistently denied having committed the crime. 686 F.2d at 37.

against the state's interest as it realistically appears at that time. The final decision is left to the sound discretion of the court and will rarely be disturbed on appeal. Here, Berkow makes no claim of innocence, but states a substantial case for hardship; however, because of his subsequent offense, his predicament is largely of his own making. We do not believe that the district court abused its discretion in concluding that, although Berkow's offense was minor, the equities in his favor do not outweigh the state's interest in this case.

## DECISION

The district court did not err in concluding that Berkow's plea was not constitutionally defective because a second offense was required to place him in danger of deportation and that Berkow failed to demonstrate that his attorney's conduct fell below an objective standard of reasonableness. The district court also did not abuse its discretion in finding that, under the totality of the circumstances, Berkow did not demonstrate a manifest injustice requiring withdrawal of his plea.

**Affirmed.**