*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1464**

State of Minnesota,
Respondent,

vs.

Charles Chuck Jackson,
Appellant

**Filed September 8, 2014
Affirmed
Worke, Judge**

Olmsted County District Court
File No. 55-CR-06-6354

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chelsie Willett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Rodenberg, Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Appellant argues that the district court abused its discretion by denying his motion to withdraw his guilty plea, claiming that he was intoxicated when he pleaded guilty resulting in his plea being involuntary. We affirm.

## FACTS

On three separate occasions in July 2006, a police officer conducted controlled buys with two confidential reliable informants (CRIs). Appellant Charles Chuck Jackson sold to a CRI a substance that appeared to be crack cocaine, but tested negative for the drug. The same CRI then purchased a substance from Jackson that tested positive for methamphetamine. On the third occasion, another CRI purchased a substance from Jackson that tested positive for cocaine. Jackson was charged with five counts of controlled substance crime: two counts of second-degree, two counts of third-degree, and an attempt to sell a simulated controlled substance.

On October 15, 2007, Jackson pleaded guilty to two counts of third-degree controlled substance crime, and the state dismissed the other charges. At the plea hearing, Jackson agreed that he was thinking clearly and had a full understanding of the proceedings. After the hearing, a deputy smelled alcohol on Jackson and gave him a preliminary breath test (PBT) that indicated a reading of .029. Jackson was brought back before the district court; the court inquired: "That's a relatively low test; did you feel you understood everything that was going on here?" Jackson replied: "Yes, I do, Your Honor, I understand everything and I am happy with my situation. I am all right." The

district court asked Jackson's attorney if further inquiry was necessary. Jackson's attorney replied: "No, Your Honor, . . . if I had had concerns about [Jackson's] competency, I would have addressed the [c]ourt. I didn't have those concerns and I did conduct private inquiry of my client." The district court concluded by stating:

> I am confident that you would have and had there been a more significant degree of or higher test, I am sure you would have been able to detect that and I am confident you didn't detect anything when you were meeting with him earlier here today. [Jackson] now reaffirms that he understood entirely everything that went on at the [plea] hearing and that the presence of a relatively low level of alcohol in his system, to my satisfaction, did not influence in any way his decision here and I am confident that he still made a knowledgeable and voluntary waiver of his right to trial and entered a knowledgeable and voluntary plea.

Jackson fled the state before sentencing. Nearly five years later, Jackson was extradited back to Minnesota after found in custody in Illinois. On October 12, 2012, Jackson moved to withdraw his guilty plea, claiming that he was "smashed on crack" when he entered his guilty plea. The district court denied Jackson's motion to withdraw his guilty plea, and this appeal followed.

## D E C I S I O N

Once a guilty plea is entered a defendant has no absolute right to withdraw it. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). "[T]he Minnesota Rules of Criminal Procedure allow a defendant to seek to withdraw a guilty plea in two circumstances." *Id.* In the first circumstance, a district court must permit withdrawal of a guilty plea at any time if it "is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice occurs if a guilty plea is invalid. *Theis*, 742 N.W.2d at 646. A

3

guilty plea is invalid if it is not voluntary, accurate, and intelligent. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). The validity of a guilty plea under the manifest-injustice standard is a question of law reviewed de novo. *Id.*

In the second circumstance, a district court has discretion to grant a motion to withdraw a guilty plea before sentencing if the defendant shows that it is "fair and just" to do so. Minn. R. Crim. P. 15.05, subd. 2; *see Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989) (stating that a district court's decision whether to permit withdrawal under the fair-and-just standard "will be reversed only in the rare case in which the appellate court can fairly conclude that the [district] court abused its discretion"). "Although this standard is less demanding than the manifest injustice standard, it does not allow a defendant to withdraw a guilty plea for simply any reason." *Theis*, 742 N.W.2d at 646 (quotation omitted).

### *Manifest-injustice standard*

Jackson claims that because he "made his motion to withdraw his guilty plea pre-sentencing . . . the fair and just standard applie[s]." But Jackson argues that his plea was not voluntary, which would make his plea invalid, implicating the manifest-injustice standard. *See id.* (stating that an invalid plea results in a manifest injustice); Minn. R. Crim. P. 15.05, subd. 1 (stating that plea withdrawal is mandatory when a manifest injustice has occurred).

The voluntariness requirement of a valid guilty plea "insures that a guilty plea is not entered because of any improper pressures or inducements." *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000) (quotation omitted). To analyze the voluntariness

requirement, "the court examines what the parties reasonably understood to be the terms of the plea agreement." *Raleigh*, 778 N.W.2d at 96. "[T]he government may not produce a plea through actual or threatened physical harm, or by mental coercion overbearing the will of the defendant." *State v. Ecker*, 524 N.W.2d 712, 719 (Minn. 1994) (quotation omitted). Jackson understood the terms of the plea agreement and acknowledged that he pleaded guilty without coercion. There is no claim that the state threatened Jackson in any way. Thus, Jackson's involuntariness argument is inapposite.

Jackson's claim that he was intoxicated when he pleaded guilty raises the question whether the guilty plea was intelligently made. The intelligence requirement insures that a defendant understands the charges against him, the rights he is waiving, and the consequences of his plea. *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). Jackson must show that he was so under the influence that he was unable to understand the rights he waived when he pleaded guilty. *See Raleigh*, 778 N.W.2d at 94 (stating that the burden of showing a plea was invalid rests on a defendant). The record shows that Jackson is unable to meet this burden.

Jackson's PBT had a reading of .029. The district court acknowledged this "relatively low test," and asked Jackson if he understood what occurred during his plea. Jackson replied that he understood everything and was happy with his situation. Jackson's attorney had no concern regarding Jackson's competency. And there was no indication that Jackson was under the influence of cocaine. Jackson argues that he was "smashed on crack," but nobody asked him about it. While the district court did not specifically ask if Jackson was under the influence of cocaine, the court asked Jackson if

5

he felt he understood everything. If affected by cocaine, Jackson could have responded that he did not understand.

Jackson argues that he could not admit that he had taken cocaine because "to do so would have required him to admit to the commission of a criminal offense," and would have violated the terms of his release. But again, Jackson could have stated that he did not understand the proceedings without admitting his cocaine use. Additionally, Jackson violated his release terms because he was prohibited from consuming alcohol. Jackson also argues that if he had the advice of counsel at his plea hearing, he could have raised the issue with his attorney and "fashion[ed] a reasonable response." But Jackson was represented by counsel.

Finally, Jackson argues that he was unable to understand the consequences of his plea. But he acknowledged that he was taking advantage of the plea to avoid a trial on two second-degree controlled-substance-crime charges. Jackson fails to show that his guilty plea was invalid resulting in a manifest injustice.

### Fair-and-just standard

Jackson also fails to meet his burden under the less-demanding fair-and-just standard. *See Theis*, 742 N.W.2d at 646 (stating that while fair-and-just standard for plea withdrawal is less demanding, a defendant is not allowed to withdraw a plea for simply any reason); *see also Raleigh*, 778 N.W.2d at 94 (stating that a defendant bears the burden of advancing reasons to support plea withdrawal). The fair-and-just standard requires consideration of (1) the reasons advanced for withdrawal and (2) the prejudice to the state if withdrawal is permitted. *Raleigh*, 778 N.W.2d at 97.

6

Jackson's reason for plea withdrawal is that he was highly intoxicated. But he fails to demonstrate that he was intoxicated. The district court inquired into Jackson's level of intoxication and his ability to understand the proceedings. Jackson's attorney and the district court were satisfied that Jackson was not intoxicated and that his plea was valid. Regarding prejudice to the state, Jackson's attorney conceded that he was unsure what evidence the state retained because the offenses occurred in 2006. The state asserted that the evidence had been destroyed and that only one of the CRIs was located. Because Jackson cannot establish that he was intoxicated and the state would be prejudiced if withdrawal were permitted, the district court did not abuse its discretion by denying Jackson's motion to withdraw his guilty plea.

*Timeliness*

Although we have analyzed Jackson's claim under the two plea-withdrawal standards, we also note that Jackson's motion was untimely. Under rule 15.05, a motion to withdraw a guilty plea in order to correct a manifest injustice must be timely. Minn. R. Crim. P. 15.05, subd. 1; *but see* subd. 2 (no timely requirement for motions to withdraw a guilty plea before sentencing under the fair-and-just standard).

Jackson pleaded guilty in October 2007, fled the state, and moved to withdraw his guilty plea five years later. The district court properly found Jackson's motion to be untimely. *See State v. Lopez*, 379 N.W.2d 633, 636 (Minn. App. 1986) (motion untimely when brought eleven months after sentencing), *review denied* (Minn. Feb. 14, 1986); *State v. Andren*, 358 N.W.2d 428, 431 (Minn. App. 1984) (motion untimely when brought eight months after plea); *Doughman v. State*, 351 N.W.2d 671, 675 (Minn. App.

7

1984) (motion untimely when brought 22 months after plea), *review denied* (Minn. Oct. 16, 1984); *see also James v. State*, 699 N.W.2d 723, 728 (Minn. 2005) (stating that when delay is deliberate and inexcusable, constituting an abuse of the judicial process, there is a sufficient basis to justify denial of relief solely on the basis that the petition is untimely).

**Affirmed.**